UNITED STATES v. NINETEEN BALES OF TOBACCO.

(District Court, S. D. New York. November 1, 1898.)

1. CUSTOMS—ADMINISTRATIVE ACT—FORFEITURE.
   Under section 9 of the customs administrative act of June 10, 1890, providing for a forfeiture of goods entered by means of a false or fraudulent invoice, *held*: that an untruthful description of the goods in the invoice was sufficient to work a forfeiture of the goods, without reference to any fraud of the party making the entry or proof of any fraudulent intent on his part.

2. SAME—FALSE INVOICE, WHAT CONSTITUTES.
   An invoice describing certain imported tobacco as "bought as fillers and to be sold as fillers," when the proof showed that the tobacco consisted in fact of "wrappers," is a false invoice within the meaning of section 9, warranting forfeiture, though the jury found the consignee

and his agent who made the entry to be innocent of fraud, the circumstances indicating a presumptive intent on the part of the shipper in Mexico to avoid the payment of the full duty on wrappers.

(Syllabus by the Court.)

Information in Forfeiture. Suit for forfeiture of goods under the provisions of section 9 of the customs administrative act of June 10, 1890.

The merchandise in question, to wit, 19 bales of tobacco, was imported from Mexico. The invoice presented to the collector of the port, and upon which entry was made, contained among other things the following language: "Bought as fillers and to be sold as fillers." The government examiner reported that the tobacco was not in fact "fillers" but "wrappers." Fillers are subject to a duty of 35 cents a pound, and wrappers to a duty of $1.85 a pound. These facts were reported to the collector, who thereupon directed that the merchandise be seized, on the ground that the goods had been entered by a false and fraudulent invoice, in that the character of the merchandise had not been correctly or truthfully stated.

The government thereupon filed an information against the goods, and Julio J. Ordetx appeared and filed a claim and answer.

The government put several witnesses on the stand, all of whom testified that each of the bales of tobacco contained more than 15 per cent. wrapper tobacco, which under the provisions of the tariff act subjected the contents of the entire bale to wrapper duty.

The foregoing fact was not controverted by the claimant.

Arthur M. King, Asst. U. S. Atty.

Charles A. Hess, for claimant.

BROWN, District Judge (charging jury). The object of this statute, gentlemen, is to secure to the United States the payment of its just duties. An incidental and by no means unimportant part of this procedure for the enforcement of the payment of the proper duties, is also equality in trade. No merchant can compete fairly and honestly against dishonesty in importations under a tariff which imposes high duties. The distinction between wrapper tobacco and fillers alone under our tariff law is very great, the duty being 35 cents a pound for fillers, but $1.85 a pound for wrappers; and so with all other branches of trade. The honest merchant cannot compete, if he pays duties honestly, with the merchant who avoids the payment of honest duties and obtains his goods for use here very much below what the honest merchant must pay. It is therefore a matter of great interest to the merchants, as well as to the United States, that the law shall be impartially and equally enforced that all may stand alike. There is no mode of enforcing this equality, or of enforcing the payment of its just dues to the government, except through you. The jury, in one shape or another, however a case may come up, determines whether the forfeiture either of the goods or of value, or the liability stated by the statute, has been incurred or not; and it is upon your faithful administration of the law according to its real intent, that the community and the government must rest. It is an important duty that you perform.

The claim here is that this consignment of tobacco was entered by means of a false invoice. The statute declares that if any person shall enter goods by means of a false invoice—I need not mention any of the other papers—or a fraudulent invoice, the goods shall

be liable to forfeiture. There is also a provision for criminal punishment. The defendant contends that there can be no forfeiture unless there has been knowingly a false and fraudulent entry. Now, it may be that the criminal side of this statute might not be enforced, because of certain other general principles of law that might be brought in to qualify this section, unless the government were both to aver in its pleadings and to sustain by its proof, the fact that the defendant, who is charged with crime, knew what he was doing and knew that the paper was false. It is not necessary here, that I should say either "Yes" or "No" to that proposition. This is not a proceeding against a person criminally. It is for a forfeiture of the goods alone.

The law provides that any person interested in the goods may come in and claim them when they have been seized. Mr. Ordetx appears here as the claimant of these goods. The entry was made in his name by Mr. Bird, under a power of attorney which covered only the authority to enter. The invoice, which is a necessary part of the entry, has been produced before you. The invoice describes the goods as "39 bales leaf tobacco (filler) bought as filler and to be sold as filler. Value, $2,452." That is its foreign value. Under the next item "6 bales leaf tobacco (filler) bought as filler and to be sold as filler. Foreign value, $392." Those make the 45 bales. The government charges that 19 of these 45 bales were in reality wrappers under the customs law, and it has produced its witnesses whom you have heard, all of whom I think state very positively that beyond doubt these 19 bales, of which samples were produced, were wrappers, differing in their estimate of the percentage of leaves from upwards of 15 per cent. as the lowest said, all the way up to an estimate of 60 per cent. of the leaves.

The claimant who has testified in his own behalf stated that he regarded the bales as fillers, and did not consider that more than 1 per cent., as I understood his evidence, of the leaves were fit for wrappers, and that those would be poor wrappers, while all might be used as filling; that they would make good filling.

Unless you are quite satisfied that these 19 bales were wrappers, that is to say, embraced more than 15 per cent. of leaves that were fit for wrappers, your verdict must be for the claimant. But, if upon this evidence you are satisfied that more than 15 per cent. of the contents of these 19 bales were really wrappers, that is to say, were fit to make wrappers, although they would not be equal to Havana wrappers, then you have to proceed to the rest of the case, which I shall now present to you.

Upon the finding of the last fact, if you so find, the invoice is undoubtedly untrue. The question remains whether it is false, so as to entitle the government to a forfeiture of the goods. The statute does not say if the person making the entry knows it to be false. No word of that character is in this section, although it is in other sections. So far that affords a presumption that the statute did not intend that knowledge on the part of the person who made the entry should be essential to the forfeiture of the goods. I do not say that it is a conclusive consideration. I merely say it is

one circumstance. I think, however, that it will not be necessary for you to be much troubled on that branch of the case if you find that these bales were wrappers, under the instruction which I feel bound to give to you as to what is further necessary in a proceeding against the goods alone; because it appears in this case from the testimony of the claimant, Mr. Ordetx, that he was not the only person interested in these goods. They were brought here apparently as a business venture during the war with Spain with the idea of their supplying deficiencies of Havana tobacco in the market. They were sent, as he says, to be sold here; sent to be sold by him on commission, but also with a further interest. He said he was somewhat interested in the goods, and he explained that by saying that he made advances to the person in Mexico who sent them here. There is no dispute about that part of the testimony, and therefore I must assume so much of it to be true, and you must do the same. It appears then that some one in Mexico, whose name I do not remember, consigned these goods to Mr. Ordetx here to be sold by him on commission, Mr. Ordetx having made advances on the goods to the consignor, and this invoice is sent on for these goods. Now, I think I must say that I regard the law on this point to be that if any person who is interested as owner, or part owner, in the goods makes a false paper which is to be used in the course of the entry, stating in it some matter which is substantially false—I say substantially false to distinguish it from some minor matter, from a clerical mistake, from an inadvertence or other incidental thing—I say if a person who is interested in the goods, makes a statement which is substantially false, and which when used upon the entry of the goods naturally tends to defeat the rights of the United States in regard to the amount of the duties which it shall receive, and which misstatement would inure to the benefit of the owner, that that at least is a false statement in every point of view within the statute, and is also a fraudulent statement, and makes such a paper, when sent by a person having that interest in the goods, to be a false and fraudulent paper—in this case a false and fraudulent invoice. So that if you find upon this evidence that the consignor in Mexico made this paper and intentionally described these as fillers when he knew that they were wrappers, or that above 15 per cent. of them were wrappers, that is a substantial misstatement such as should render the goods liable to forfeiture; and if you believe that condition of things it is your duty so to find.

As bearing upon that question you should look further at the language of this invoice. It is possible that a foreign owner interested in goods might send them here with no knowledge of our tariff laws or their distinctions. But a person doing that, interested in the goods and sending them here, is not entitled to the presumption of ignorance. If he sells them here he should be presumed to know something of the taxes upon such goods. It is for you to consider whether, as a reasonable man, a person would send goods here subject as wrappers to $1.85 a pound without knowing anything about it. Whether that is in the least degree probable. What I notice here and what I think I ought to call your attention

to is the very specific language of this invoice, and submit to your reasonable judgment whether you can ascribe such language to anything else than an intentional description of these goods in such a way as to entitle the owner to have them entered at the least possible tariff rate. Why should a person sending goods to this country after having stated in the invoice that these are 39 bales of leaf tobacco of so many pounds, of such a value and amounting to so much, go on to say further, "Filler, bought as filler and to be sold as filler," unless he wanted to have that believed, and wanted to invoice them as fillers when 19 out of 45 were wrappers subject to about five times the duty. That is a fair question for you to ask. If that was done deliberately with any such intention, it was done knowingly, and the question for you is, can there be any doubt about it? If you find it was so done, then I must instruct you that he, as a person interested in these goods and in the entry, and for whose benefit this entry was in part made, has by that act and by sending this invoice for the purpose of being entered, as it must be, made these goods subject to forfeiture.

On looking over the pleadings, in answer to a request by the claimant, I think I am bound to hold that the pleading is sufficient in form to justify a verdict in favor of the government if you find these two things, viz., that the articles were wrappers; that is to say, that the bales contained more than 15 per cent. fit for wrappers; and that this invoice was sent on from Mexico by a person interested in them for the purpose of being entered as fillers when they were in fact wrappers.

I think it also suitable, for the purpose of enabling this question to be fully considered on review, if the claimant should desire, to ask you,—in case you find a general verdict for the government, that is if you should find for the government on the two questions I have submitted to you,—to ask you to find an answer to a further question, namely, did Mr. Ordetx personally know of the form of the invoice in the particulars stated, describing them to be bought as fillers and to be sold as fillers, or was he in any way in complicity with the Mexican owner in sending them here under that description in this invoice; that is, by any arrangement, by correspondence or otherwise, was he privy to this description of the goods, or to the endeavor to enter wrappers as fillers? and on that question that you should answer "Yes" or "No." I submit that question to you to be answered wholly apart from your general verdict, simply for the purpose of enabling the question, as between the government and Mr. Ordetx, to be settled without a further trial. If you should find, for instance, that Mr. Ordetx had no knowledge of this invoice, or the statements in it, that would present the question whether such knowledge was necessary in order to permit a forfeiture of the goods. I have already charged you that under the testimony in the case, under the relations of the Mexican owner to the goods, being the general owner of them, Mr. Ordetx's knowledge of the falsity of the invoice was not necessary and was not material. If upon a review of this case it should be held to be in fact material and that Mr. Ordetx's ignorance or knowledge of those two things would make a difference in the result, then after

your. finding it would not be necessary to have a further trial on that point, and it is to save that further trial in that event that I ask you to answer the additional question.

The jury returned after consultation and answered the questions asked by the court as follows: The jury answered "Yes" to the court's question as to whether they found that the bales contained more than 15 per cent. of wrapper tobacco, and the jury answered "No" in response t) the question of the court as to whether Mr. Ordetx or his agent, Mr. Bird, had any knowledge of the falsity of the invoice.

The jury thereupon rendered a general verdict in favor of the United States.