UNITED STATES v. ROSENTHAL et al. (three cases).

SAME v. BROWNE.

(Circuit Court, S. D. New York. November 17, 1903.)

1. CUSTOMS DUTIES—INDICTMENT FOR DEFRAUDING—FRAUDULENT ENTRY OF GOODS.

An indictment under Rev. St. § 5445 [U. S. Comp. St. 1901, p. 3678], which charges that defendants, on a day named, "with intent * * * that the United States should be wrongfully deprived of a portion of the lawful duties due" on certain imported goods, which were specifically dutiable according to weight, effected an entry thereof at less than their true weight, and by payment of less than their legal duty, sufficiently charges that the entry was "knowingly" effected, and also that the entry was a completed entry, on which the duty was liquidated, and not merely the preliminary entry.

2. SAME—CHARGING USE OF FALSE INVOICE—KNOWLEDGE OF FALSITY.

An indictment charging that persons, intending to defraud the customs revenue, used a false invoice, that in its nature would tend to effect the fraud, sufficiently charges that they knew the false nature of such invoice, and its capacity for effecting the fraud.

3. SAME—IRREGULARITY OF PRACTICE IN CUSTOMHOUSE.

While an importer cannot be subjected to a forfeiture or penalty unless the practice prescribed by statute has been followed in the customhouse, one charged criminally with having effected an entry of goods at less than the true weight, and by payment of less than the legal duty, by means of a false invoice, and by the bribing of the examiner to approve such invoice, cannot take advantage of the fact that the practice of submitting the matter to the examiner, instead of to a surveyor, was

irregular and unauthorized, and that the examiner had no legal right. under the statute, to do the things in relation to which he was corruptly influenced.

**4. SAME—CONSTRUCTION OF STATUTE.**

An indictment indorsed as based on Rev. St. § 5445 [U. S. Comp. St. 1901, p. 3678], charging defendants with having effected an entry of goods at less than their true weight, and by payment of less than the legal duty thereon, by means of a false invoice and the bribery of an officer, is sustainable under section 9 of the customs administrative act of June 10, 1890 (chapter 407, 26 Stat. 135 [U. S. Comp. St. 1901, p. 1895]), conceding that such section supersedes said section 5445.

**5. SAME—OFFENSE BY REVENUE OFFICER—ADMITTING TO ENTRY FOR LESS THAN LEGAL DUTY.**

Under Rev. St. § 5444 [U. S. Comp. St. 1901, p. 3677], which provides that "every officer of the revenue, who by any means whatever knowingly admits or aids in admitting to entry any goods * * * upon payment of less than the amount of duty legally due thereon," shall be punished by fine or imprisonment, an officer is indictable where he knowingly and corruptly aids an importer in effecting an entry on payment of less than the legal duty, although his action was in the performance of a duty assigned to him by a superior officer, which he was not obligated to perform, and could not legally perform under the statute.

**6. CONSPIRACY—DEFENSES.**

It is no defense to an indictment under Rev. St. § 5440 [U. S. Comp. St. 1901, p. 3676], for conspiracy by defendants, who were importers, and an officer of the customs revenue service, to defraud the United States by effecting the entry of goods by payment of less than the legal duty, by means of false invoices to be approved by such officer, that if the practice prescribed by the statute had been followed the object of the alleged conspiracy could not have been accomplished, because such officer was not authorized to pass on the correctness of the invoices, where the indictment avers that he was charged with such duty by the practice prevailing at the port, and that defendants, by taking advantage of such practice, in fact accomplished the purpose of the conspiracy. In such case it is immaterial whether the practice was legal or illegal.

**7. CUSTOMS DUTIES—OFFENSES IN ENTRY OF GOODS—FALSE INVOICE.**

In an indictment under the provision of section 9 of the customs administrative act of June 10, 1890 (chapter 407, 26 Stat. 135 [U. S. Comp. St. 1901, p. 1895]), which makes it a criminal offense "if any * * * importer * * * shall make or attempt to make any entry of imported merchandise by means of any fraudulent or false invoice," it is not necessary to aver that the United States was in fact deprived of duties by the acts of defendants.

**8. SAME—DUTIES OF EXAMINER—APPRAISAL OF SILKS.**

In approving woolen fabrics containing silk for duty under the tariff act of July 24, 1897 (chapter 11, § 1, Schedule L, 30 Stat. 186 [U. S. Comp. St. 1901, pp. 1669, 1670]), which requires the ascertainment of the number of ounces in weight per square yard, the percentage of silk therein, and other conditions relating to dyeing, etc., under the statutes and regulations the goods may appropriately be sent to an examiner, rather than to a weigher, whose duty is confined to weighing articles in bulk; and it is within the examiner's duty to make return of the weight, as well as the other requisite facts.

**9. SAME—OFFENSES—FALSE INVOICE.**

Under section 9 of the customs administrative act of June 10, 1890 (chapter 407, 26 Stat. 135 [U. S. Comp. St. 1901, p. 1895]), which makes it a criminal offense for "any importer to make or attempt to make any entry of imported merchandise by means of any fraudulent or false invoice, affidavit, paper, * * * or by means of any false or fraudulent practice or appliance whatsoever," the offense is committed by presenting an invoice containing false statements as to the weight of the merchandise, knowing that, under the practice of the office, such invoice

would be used for the purpose of the first entry, and, if approved by the examiner, as the basis for the liquidation of the duties, and intending it to be so used; and it is immaterial whether or not a statement of such weight was required by law.

Criminal prosecutions for violation of the customs laws, and for conspiracy to violate the same. On demurrer to indictments.

See 121 Fed. 862.

Henry L. Burnett, U. S. Atty. (W. Wickham Smith, Sp. Asst. Atty. Gen., of counsel).

Dittenhoefer, Gerber & James (A. J. Dittenhoefer and Frank H. Platt, of counsel), for defendants Rosenthal and Cohn.

Judson G. Wells, for defendant Browne.

THOMAS, District Judge. This discussion involves the validity of four indictments, arising out of facts disclosed by them. The defendants Rosenthal and Cohn, under the name of A. S. Rosenthal & Co., imported from Japan goods dutiable by weight, which were invoiced and consulated abroad by the importers' agent, and the invoice forwarded was used by the importers to enter for immediate consumption the goods at the customhouse in New York. After the collector had estimated the duties, on the basis of the weights stated in the invoice, the defendants paid such duties and obtained the goods, save the portion thereof sent for examination to the appraiser's department. The defendant Browne, an examiner, returned the goods as in conformity to the invoice, and the entry was liquidated accordingly. The goods were fabrics composed of silk and cotton, and the duty was measured by the number of ounces the silk weighed per square yard, the percentage of silk in it, and by various conditions of the silk as to dyeing, etc., later herein more particularly described. On account of the special and delicate ascertainments of weight, ingredients, and other conditions required in the examination, the goods were sent to the appraiser's office, to be investigated by the examiner, in the several particulars required, rather than to the surveyor's office for the purpose of weighing. The government contends that the weights in the invoice were false, and were made so at the importers' instigation; that they used the false invoice to enter the goods, and that Browne, the examiner, upon receiving the goods that went to the appraiser's office, passed and reported them as conforming to the false invoice, having been corruptly induced so to do by the importers, and that the liquidation was made in accordance with such report; and that thereby the government was deprived of legal duties. There are four indictments, generally described as follows: An indictment against Rosenthal and Cohn for entering the goods at less than their weight, and for less than the legal duty, by means of a false invoice, which the examiner Browne confirmed by his report, corruptly induced thereto by the defendants. Indorsed under section 5445, Rev. St. [U. S. Comp. St. 1901, p. 3678]. An indictment against Browne for fraudulently aiding in the entry of goods for less than the amount of the legal duty, in the manner hereinafter stated. Indorsed under section 5444 [U. S. Comp. St. 1901, p. 3677]. An indictment against all the defendants for conspiracy to enter the

goods as above stated. Indorsed under section 5440 [U. S. Comp. St. 1901, p. 3676]. An indictment against the importers for making entries by means of false invoices; also for filing with the collector declarations purporting to have been subscribed and declared before a notary public, but which were false and pretended declarations, which had not been signed or made before such notary public, which were intended to deceive the collector and induce him to admit the goods contrary to law, and which did have that result. Indorsed under section 9 of the act of June 10, 1890 (chapter 407, 26 Stat. 135 [U. S. Comp. St. 1901, p. 1895]). All of the indictments are later stated with greater technical accuracy.

The defendants raise many objections to the indictments severally, but some of them go to all the indictments. There is one broad, general objection, which is to the effect that the plan of operation charged against the defendants, whereby, as alleged, they intended to defraud the government of its revenue, was impossible of operation, because it contemplated a procedure that could not, under the rules that should obtain in the customhouse, be effectively employed. The contention is that the goods were dutiable by weight, and would go to the weighers in the surveyor's department, and not to the examiners in the appraiser's department; that the invoice does not go to the surveyor's department, as the weighers there are required to act independently of it; that Browne could not, by law, come in official relation to the goods, and that, even if he did, he could not report to the collector, as charged, but only to the assistant appraiser, and he to the appraiser, and he to the collector; and that the practice of sending the goods to the examiner, and of his reporting to the collector thereon, as charged in the indictment, was unlawful. Moreover, it is urged that the examiners and appraisers report only upon value, and that it was not their duty to report the weight of the goods to the collector, and that he, therefore, could not have acted upon any such information received from Browne. Further, it is objected that the importers were not obliged to state the weight in the invoice, unless the goods were purchased by weight, which is not alleged, and the statements therein are immaterial, and cannot legally be deemed to have influenced the entry or the liquidation of the entry. It is further objected that section 5445 has been repealed, and that section 9 of the customs administrative act now embodies the law, and that the indictment purporting to be found under section 5445 is void. The same claim is made as to the indictment against Browne alone, indorsed as found under section 5444. There are numerous other special objections to specific indictments, relating in great part to the insufficiency of allegations. The indictments will now be considered seriatim:

### Indictment No. 1.

This indictment (for convenience called "No. 1"), by its indorsement purporting to be found under section 5445, Rev. St. U. S. [U. S. Comp. St. 1901, p. 3678], charges that on February 6, 1901, the defendants, under name of A. S. Rosenthal & Co., imported at the port of New York, from Japan, mixed silk and cotton goods in the piece and silk handkerchiefs, upon which there became due "specific

126 F.—49

duties upon the weight of a portion thereof in pounds avoirdupois"; that then and there, to wit, on February 6, 1901, defendants, with intent then and there that the United States should be wrongfully deprived of a portion of the lawful duties due upon such goods, unlawfully "did effect an entry thereof at the customhouse • * * with the collector of customs * * * at less than the true weight thereof, and by payment of less than the amount of duty then legally due thereon, which said entry was then and there a written entry for warehousing" said goods, and numbered by the collector 22,680; "and the effecting of which said entry in the manner and for the purpose aforesaid was then and there accomplished by" defendants "by their theretofore directing and causing their agents in Japan aforesaid to make an invoice of the said goods, * * * and have the same certified by a consul "of the United States as required by law, and forwarded with the said goods * * *" to defendants "as the consular invoice upon which to make, and upon which they thereafter did make, the entry aforesaid, * * * which said invoice contained certain false statements of the weight of certain of the said goods; * * *" a statement that the weight "of the goods in case ·numbered 1,891, mentioned in said invoice, was 28,812 mommos, equivalent to 238½ pounds avoirdupois, whereas in truth * * * the weight thereof was 328½ pounds avoirdupois; * * * and by their making the entry hereinabove described upon and in accordance with the said invoice, and the false statements so contained therein as aforesaid, and then by their corruptly procuring the said invoice to be wrongfully approved, passed, and reported to the said collector as true, so far as the said false statements of weights were concerned, by the examiner of merchandise at the said port before whom the same thereupon came for examination according to law and the practice at the said port." The statement may be further reduced to this: The defendants, on a day named, with intent to defraud the United States of duty on goods specifically dutiable according to weight, effected an entry thereof, which was an entry for warehousing the goods, at less than their weight, and by payment of less than the legal duty. They effected said entry (1) by making it in accordance with false statements as to weight in the invoice, which invoice had by their direction been made, consulated, and forwarded by their agent in Japan; (2) by corruptly procuring said invoice to be wrongfully approved, passed, and reported by Browne, the examiner, to the collector.

Section 5445, Rev. St. U. S. [U. S. Comp. St. 1901, p. 3678], is as follows:

"Every person who, by any means whatever, knowingly effects, or aids in effecting any entry of any goods, wares, or merchandise at less than the true weight or measure thereof, or upon a false classification thereof as to quality or value, or by the payment of less than the amount of duty legally due thereon, shall be fined," etc.

The offense described is "knowingly effecting" an entry of goods (1) at less than their true weight or measure; (2) upon a false classification; or (3) by payment of less than legal duty. The word "knowingly" applies to each of the three alternatives. Now apply this

statute to the indictment. The defendants, with intent to defraud the United States of duty on goods dutiable by weight, effected an entry at less than their true weight, and by payment of less than legal duty. This is equivalent to a charge that they fraudulently effected such entry at less than true weight by insufficient payment of duty. Thus far, at least, scienter is alleged. Then the indictment describes how they made this fraudulent entry. They used an invoice containing false statements, and corruptly procured the examiner of the goods to approve the invoice and report the same to the collector. If it be charged that defendants, intending to cheat the government of duties by entering goods at false weights, used an invoice containing a false statement of weights, it may be inferred that they knew that such invoice was false. A charge that a person, intending to defraud, used, for effecting the fraud, a false instrument, that in its nature would tend to effect the fraud, sufficiently charges that he knew the nature of such instrument, and its capacity for effecting the fraud. If an indictment charging that A., intending to defraud B. by passing to him counterfeit money, charged also that he effected the fraud by delivering to A. a counterfeit bill of a certain description, there would be a sufficient charge that the bill was false, to A.'s knowledge.

But it is further urged that the entry charged is not the full entry that results in liquidation, but the entry preliminary to proceedings in the appraiser's office; hence it could not have been effected by any action or omission of the examiner. The indictment charges that the entry was effected on February 6th, "which said entry then and there was a written entry for warehousing of the said goods," "and the effecting of which said entry in the manner and for the purpose aforesaid was then and there accomplished." Here an entry is charged that seems to have been perfected at a designated date. Then the indictment states how it was done, viz., by the use of a false invoice approved and reported to the collector by the examiner, corruptly induced thereto. If the entry, as charged, was completed February 6th, then it could not have been effected by a false affidavit approved by an officer in the appraiser's office, for the purposes of final liquidation, unless the whole transaction was at the same time and on the same date. There is nothing in the indictment to indicate that such was not the case, and however extraordinarily rapid such progress may seem, and however inconsistent the conclusion with some of the language of the indictment, it may be considered that such was the case. But it is not necessary to rest the conclusion upon a possibility so frail. Beyond this, the indictment charges the main offense to be that the defendants, with intent to deprive the United States of legal duties, entered goods "at less than the true weight thereof, and by payment of less than the" legal duty. That is the main offense charged, and that is the essential offense denounced by section 5445. How it was accomplished was subsidiary. The vital charge is not the false invoice or use thereof, nor the corrupt approval thereof by the examiner, although it may be necessary to charge the means. The means stated in the present indictment referred to proceedings at the time of the preliminary proceedings at the customhouse, and to subsequent proceedings arising from action at the appraiser's office. Hence the

entry intended to be charged may be inferred by the proceedings described, rather than by certain limitations of language which by itself would support the defendants' contention.

But it is further objected that certain of the means alleged to have effected the entry were impossible, as the examiner had no right to weigh the goods or to report directly to the collector; and the statute is cited in support, as well as decisions in civil cases to the effect that forfeitures or penalties would not be enforced under similar states of fact. There is no analogy between a civil action and a criminal case of the nature of the one at bar. An importer cannot be penalized unless his goods are treated in the customhouse by the processes demanded by the statute. But wrongdoers may not complain because they adopt, and then convert to felonious uses, practices that may be departures from the statute, whereby they obtain their goods for less than the proper duty. The defendants' argument is that, unless the practices in the customhouse are authorized by law, they cannot be corrupted, although it result in defrauding the government of its legal duties; that an examiner, in violation of the statute, reporting directly to the collector, rather than by the intermediation of the appraisers, may not be corrupted to approve a false invoice; and that, although there be official reliance thereon for liquidating the entry, yet the wrongdoers may not be punished under the statutes here involved. The defendants' contention would result in this: If the customhouse authorities use an examiner to ascertain the weight of silk, and accept his report, an importer may enter his goods on a false invoice, bribe the examiner to weigh and report falsely, thereby procure the illegal passage of his goods, and yet be guilty of no false entry. By this rule every customhouse officer must be correct in his practice, to enable the government to convict an importer of corruptly turning unauthorized practices to his own account for the purpose of defrauding the government. He who defrauds the revenue and corrupts its officers is not assured of adherence to the directions of the statutes, but the importer who acts honestly may demand that his goods be appraised strictly pursuant to the statute. The former does, but the latter does not, approve the departure from regularity. But these defendants found what they now charge was an illegal devolution of one officer's duties upon another. Thereupon they sanctioned the practice by using it, corrupted the substituted officer, gained the benefit of his report through its acceptance by his superior, and now declare that they could not corrupt the officer who assumed the duty, but could have corrupted only the officer strictly entitled to perform the duty. If the officers in the customhouse, from lowest to highest, for the convenience of business, observed a practice not sanctioned by statute which establishes the routine, they may be at fault. But the combination of their inadvertence with the unlawful act of a person bribing or otherwise corrupting an officer pursuing the unauthorized routine does not excuse the wrongdoers.

The defendants further urge that section 5445 was repealed by section 12 of the anti-moiety act of June 22, 1874 (chapter 391, 12 Stat. 188), which in turn was superseded by section 9 of the customs administrative act of 1890, under which an indictment has also been

found against the defendants for the same kind of transaction. It will be observed that the indictment, indorsed "Indictment under section 5445 R. S. U. S." is not affected by its indorsement. There is nothing in the indictment that limits it to section 5445. If section 9 of the act of 1890 supplants section 5445, Rev. St., it is because it embraces section 5445, or is inconsistent with it. Whether section 5445 is entirely covered by section 9 need not be decided. But it does appear that section 9 is sufficiently broad to cover the indictment in question. It is no objection to the indictment that another indictment, under section 9, has been found against the defendants. The defendants' position that no indictment under section 9 can be sustained, unless it appear that the United States was deprived of its lawful duties, is unimportant as to this indictment, because the indictment does show that less than the legal duty was paid.

Some further general observations respecting this and the other indictments will be made later.

### Indictment No. 2.

Indictment against defendant Browne, by its indorsement purporting to be found under section 5444, Rev. St. [U. S. Comp. St. 1901, p. 3677], for convenience will be called "Indictment No. 2."

"Sec. 5444. Every officer of the revenue who, by any means whatever, knowingly admits or aids in admitting to entry any goods, wares, or merchandise, upon payment of less than the amount of duty legally due thereon," shall be punished as provided.

The objection to this indictment requiring immediate reference is that Browne was an examiner not legally qualified or obligated to weigh silks; that he had no ability to report to the collector; and that the collector could not act thereon, and could not have acted thereon. The proposition is this: If the collector, by inadvertence, error, or design, send an article to an examiner which he should send to a weigher, or the examiner, an aid to the appraiser, report directly to the collector, when he should report to the assistant appraiser, and he to the appraiser, and he to the collector, and the goods be entered on the examiner's report, the examiner cannot be punished for aiding an entry of goods upon payment of less than the amount due, by corruptly agreeing with the importer to make a fraudulent examination and report to the collector, whereby a less amount than the legal duty is received. The argument is reduced to this: That he did not commit a crime, because the act which he did dishonestly he was not obligated to do, and could not legally do at all. That is the defendant's position. It may be that he was not obliged to act at all; but if he did act, he was bound to act in accordance with his oath, and abstain from intentionally and corruptly giving false information to the collector, based upon corrupt acts or omissions in his examination. Section 5444 provides for punishing any officer of the revenue who knowingly admits or aids in the entry of goods for less than the amount of the legal duty. To bring the offender under the statute, it is not necessary that he should at the time of doing the forbidden act be shown to have been acting strictly as a de jure officer. Certainly it is sufficient that he, as an officer of the revenue, was under-

taking to perform a duty within the department of which he was an official member, and to which duty he had been assigned by his superior, according to the practice of the department, and upon the understanding that it was an obligatory duty, and that he accepted the duty and undertook its performance. Every officer "by any means whatever" knowingly aiding the illegal admission of goods is punishable. If the means adopted by him was to accept a duty which did not belong to him, and to take advantage of his knowledge that his performance of that duty would be recognized by his superior officer, that would be quite as much of a "means," within the meaning of the statute, as if he had departed from a duty regularly laid upon him. The indictment is sufficient in the respects discussed, and is not open to some of the objections urged against indictment No. 1.

## Indictment No. 3.

In the indictment under section 5440, Rev. St. U. S., as amended by Act May 17, 1879 (1 Supp. Rev. St. 264, c. 8 [U. S. Comp. St. 1901, p. 3676]), the defendants Rosenthal, Cohn, and Browne are indicted for conspiracy. This indictment (herein called "Indictment No. 3") charges that the defendants conspired to defraud the United States of money then legally due and to become due the United States as duty upon importations of dutiable goods from foreign countries then made and thereafter to be made by Rosenthal and Cohn, and the conspiracy was to be effected as follows: Rosenthal and Cohn were to cause such goods to be shipped from the foreign countries, consigned to their firm, A. S. Rosenthal & Co., at the port of New York, at which port they, upon consular invoices containing false statements as to the weight of the goods, and false descriptions of the same, and known to such two defendants to be false, were to make written estimated entries of such goods at the customhouse upon their arrival, and when certain of such goods should be designated to be sent to the public stores for examination and appraisal, and when such goods and the invoice accompanying them should be given to the defendant Browne, who was an examiner of imported merchandise at the port, for examination and appraisal, Browne was thereupon to neglect and refuse to ascertain the true weight and nature of the goods, as it was his duty, under the law and under the practice of the port, to do, and was to knowingly make false returns and reports upon such invoices as to the weight and nature of the goods, to the end that in the entries thereof the duty upon the same should be, according to the practice of the port, liquidated by the collector, upon such returns or reports, and less than the amount of the legal duty thereon collected by the collector.

It is further charged that in pursuance of such conspiracy, and in order to effect the object thereof, said Rosenthal and Cohn, on the 30th day of July, made and caused to be made, under their firm name, an entry of dutiable goods at the customhouse, with the collector, to wit, an entry, for immediate consumption, of 34 cases of mixed silk and cotton goods, and silk goods, on that day imported by the said firm from Japan. Conspiracy is charged before and on the 30th day of July in the same year. Other overt acts are charged severally

as of the following dates: July 16, 1901, July 27, 1901, June 20, 1901, and June 25, 1901. The second and third overt acts are similar in nature to that first charged. The fourth overt act charged is that Browne, as examiner of merchandise, as set out in the first count, unlawfully and contrary to his duty, knowingly and willfully made certain false returns and reports upon a certain consular invoice as to the weights of portions of the goods mentioned in the invoice, by checking and approving as true certain false statements made in that invoice as to the weights of the said portions of said goods, and neglected and refused to ascertain the true weights of said portions of said goods, in consequence of which action of Browne the entry of the said goods, which was before then, to wit, on the 7th day of June, in the year aforesaid, made at the customhouse of the said United States, at the said port of New York, with the collector of customs, by the defendants Rosenthal and Cohn, under their firm name, was thereafter, to wit, on the 24th day of June, in the same year, liquidated by the said collector in accordance with the said returns and reports, and less than the amount of duty legally due upon the said portions of the said goods was collected by the said collector, and the United States was defrauded of a considerable portion of the duty then and there legally due thereon, which said invoice then and there was an invoice running from A. S. Rosenthal & Co., Japan, to Abraham S. Rosenthal and Martin L. Cohn, under the firm name of A. S. Rosenthal & Co., at New York, aforesaid, covering certain cases of mixed cotton and silk goods, silk goods in the piece, silk handkerchiefs and mantel scarfs, and one of which said false statements in the said invoice then and there was a statement to the effect that the weight of the portion of the said goods, wares, and merchandise contained in a certain case in said invoice was a certain number of pounds avoirdupois, specifically stated in the indictment, whereas, in truth and in fact, the weight thereof was much greater, the quantity being specifically stated. The fifth overt act is similar to the one just described.

Here, again, the defendants object to the sufficiency of the indictment upon a principal ground that the entry could not be effected in the manner charged, and that the overt acts, in their nature, could not be in furtherance of the indictment. The argument is renewed that Browne was not a weigher, that he had no power to weigh the goods, that he had no power to report to the collector, and that therefore the conspiracy was not so conceived that it could be made effectual. But it is charged that it was the duty of Browne, according to the practice of the port, to examine and report upon the goods; and, from the facts charged and admitted by the demurrer, it is apparent that the defendants intended to take advantage of that practice to pass the goods through the customhouse. The defendants insist that the plan could not be carried out, but the indictment charges that it was effected, and that not only the conspiracy to be so effected was made, but also that it was carried out by overt acts in the precise manner concerted by the conspirators, and the goods passed, and the government defrauded of revenue. Whether the routine observed in the customhouse was legal or illegal, it is charged that it existed; that the collections of customs were in fact made pursuant to it.

Hence it appears that the defendants conspired to avail themselves of the system for the purpose of defrauding the government of legal duties. It seems hardly worth while to suggest that a thing that was done could not be done, and the mere fact that the working plan at the customhouse did not follow the direction of the statute would be no excuse for people who adopted that plan for the purpose of passing goods and defrauding the government of revenue. There will be some later reference to this matter.

## Indictment No. 4.

The fourth indictment (herein called "Indictment No. 4"), against Rosenthal and Cohn, by its indorsement appears to be based on section 9 of the act of Congress approved June 10, 1890 (1 Supp. Rev. St. U. S. 744, c. 407 [U. S. Comp. St. 1901, p. 1895]), better known as the "Customs Administrative Act." Section 9 reads as follows:

"Sec. 9. That if any owner, importer, consignee, agent, or other person shall make or attempt to make any entry of imported merchandise by means of any fraudulent or false invoice, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance whatsoever, or shall be guilty of any wilful act or omission by means whereof the United States shall be deprived of the lawful duties, or any portion thereof, accruing upon the merchandise, or any portion thereof, embraced or referred to in such invoice, affidavit, letter, paper, or statement, or affected by such act or omission, such merchandise, or the value thereof, to be recovered from the person making the entry, shall be forfeited, which forfeiture shall only apply to the whole of the merchandise or the value thereof in the case or package containing the particular article or articles of merchandise to which such fraud or false paper or statement relates; and such person shall, upon conviction, be fined for each offense a sum not exceeding five thousand dollars, or be imprisoned for a time not exceeding two years, or both, in the discretion of the court."

It is objected that counts 1 to 4, inclusive, charge no crime, for the reason that they do not allege that the United States was deprived of duties by the alleged misstatement of weights in the invoice, but only charge that the defendants intended that the United States should be deprived of duties. The allegation is sufficiently within the decision of Judge Benedict in United States v. Cutajar (C. C.) 60 Fed. 744, and is quite consistent with the statement of Judge Brown in United States v. Nineteen Bales of Tobacco (D. C.) 112 Fed. 779. It is an offense under section 9 if any person shall make, or attempt to make, an entry by certain specified means, however such entry affect the revenue of the government. The intention is to punish a person for using in making an entry documents falling under certain designated classes. The use of such means is made per se criminal. The section in this regard is equivalent to this: That the use of a fraudulent or false invoice in an entry made or attempted shall be criminal; and so the use of an affidavit, letter, paper, or false statement; and so any false or fraudulent practice or appliance. Any such means employed in making or attempting the entry Congress was willing to command should be punished, whether pecuniary injury to the government was present or absent. Then Congress adds the further provision that, if any person shall be guilty of a willful act or omission, he shall be punished, provided such act or omission results

in the deprivation of the United States of lawful duties. A willful act or omission might not in itself be fraudulent, and it might in itself, save as a matter of infraction of discipline, be entirely harmless, and it might occur in such a great variety of ways that Congress was unwilling to attach the punishment to it, unless it was the proximate cause of the government losing revenue.

Some further observations may be made upon the defendants' contention (1) that the importers were not required to state the weights in the invoice, unless the indictments charged that the goods were purchased by weight; (2) that the goods by law should be sent to the weighers, who did not receive the invoice; (3) that the invoice was sent to the examiner, who, as an aid to the assistant appraiser, was required only to ascertain the value of the property, and not to weigh the same and to report thereon.

The defendants, among other things, call attention to the following rules, from whose provisions the defendants seek to draw conclusions favorable to themselves:

Article 413 of the customs regulations is as follows:

"Whenever the duties upon entries depend upon weight, gauge, or measure, the invoice weights and quantities will be used as the basis for estimating the same, and goods to be weighed, gauged or measured will be indicated on the permit, and the official returns of the surveyor's officers will be adopted in liquidation."

Article 1246 of the customs regulations is as follows:

"It is the duty of the appraiser, or officer acting as such, to make careful examination of any merchandise which the collector designates for that purpose, and to appraise the actual market value or wholesale price thereof at the time of importation, in the principal markets and in the currency of the country, whence the same was imported; also, to ascertain the quantities thereof except of such goods as require weighing, gauging or measuring. These facts will be endorsed upon the invoice and signed by the appraiser, and the invoice will then be promptly returned to the collector."

Article 1416 of the customs regulations is as follows:

"As soon as the appraiser has made his report to the collector of value, character and quantity of the merchandise contained in any foreign invoice, and the surveyor has given all the information required of him concerning the weight, gauge and measurement of the same, the collector shall compare the reports, so received, with the invoice and entry, and shall carefully compute the duty upon the basis of such reports. * * *"

It is considered that the goods in question did not fall under these rules. They could not, in the nature of the case, be weighed by "weighers," as the term is used in the statute. Weighers are persons who simply weigh goods in bulk as they come to their hands, and it seems to be contemplated that their duties shall be performed on the docks where the goods are landed.

Paragraph 392 of the tariff act of July 24, 1897 (chapter 11, § 1, Schedule L, 30 Stat. 187 [U. S. Comp. St. 1901, p. 1670]), provides:

"In ascertaining the weight of silk under the provisions of this schedule, the weight shall be taken in the condition in which found in the goods, without deduction therefrom for any dye, coloring matter, or any other foreign substance or material."

Paragraphs 387 and 388 (chapter 11, § 1, Schedule L, 30 Stat. 186 [U. S. Comp. St. 1901, pp. 1669, 1670]) provide for the duty. The

system of taxation seems to be to exact a duty on woven fabrics in the piece according to the number of ounces per square yard and the percentage of silk therein, qualified by several other conditions that must' also be ascertained.

The variety of official duties connected with the importation is best illustrated by quoting paragraph 387:

"Woven fabrics in the piece, not specially provided for in this act, weighing not less than one and one-third ounces per square yard and not more than eight ounces per square yard, and containing not more than twenty per centum in weight of silk, if in the gum, fifty cents per pound, and if dyed in the piece, sixty cents per pound; if containing more than twenty per centum and not more than thirty per centum in weight of silk, if in the gum, sixty-five cents per pound, and if dyed in the piece eighty cents per pound; if containing more than thirty per centum and not more than forty-five per centum in weight of silk, if in the gum, ninety cents per pound, and if dyed in the piece, one dollar and ten cents per pound; if dyed in the thread or yarn, and containing not more than thirty per centum in weight of silk, if black (except selvedges) seventy-five cents per pound, and if other than black, ninety cents per pound; if containing more than thirty and not more than forty-five per centum in weight of silk, if black (except selvedges), one dollar and ten cents per pound', and if other than black, one dollar and thirty cents per pound; if containing more than forty-five per centum in weight of silk, or if composed wholly of silk, if dyed in the thread or yarn and weighted in the dyeing so as to exceed the original weight of the raw silk, if black (except selvedges), one dollar and fifty cents per pound, and if other than black, two dollars and twenty-five cents per pound; if dyed in the thread or yarn, and the weight is not increased by dyeing beyond the original weight of the raw silk, three dollars per pound; if in the gum, two dollars and fifty cents per pound; if boiled off, or dyed in the piece, or printed, three dollars per pound: if weighing less than one and one-third ounces and more than one-third of an ounce per square yard, if in the gum, or if dyed in the thread or yarn, two and one-half dollars per pound; if weighing less than one and one-third ounces and more than one-third of an ounce per square yard, if boiled off, three dollars per pound; if dyed or printed in the piece, three dollars and twenty-five cents per pound; if weighing not more than one-third of an ounce per square yard, four dollars and fifty cents per pound; but in no case shall any of the foregoing fabrics in this paragraph pay a less rate of duty than fifty per centum ad valorem."

Hence it is necessary to ascertain (1) the number of square yards; (2) the weight per square yard; (3) the percentage of silk in weight; (4) if in gum, or if dyed in the piece, thread or yarn; (5) color; (6) if dyed in the thread or yarn and weighted in dyeing, and other conditions. The ascertainment of the weight is important because it becomes an ultimate basis of computation, but further examinations must be had to ascertain other ingredients and conditions. Examiners are appointed to aid the assistant examiners "in the examination, inspection, and appraisement of merchandise," and in common with others an examiner is required to take an oath that he "will use his best endeavors to prevent and detect frauds against the laws of the United States imposing duties upon imports." It is the duty of an appraiser "to direct and supervise the examination, inspection, and appraisement according to law, of such merchandise as the collector may direct pursuant to law, and to cause to be duly reported to the collector the true value thereof as required by law." Section 2614, Rev. St. [U. S. Comp. St. 1901, p. 1804]. It is the duty of the assistant appraisers, whom the examiners are to aid, "to examine and in-

spect such goods, wares, and merchandise as the appraiser may direct, and truly to report to him [the appraiser] the true value thereof, according to law." Section 2615, Rev. St. [U. S. Comp. St. 1901, p. 1805].

Section 10 of the customs administrative act (26 Stat. 136 [U. S. Comp. St. 1901, p. 1922]) provides:

"Sec. 10. That it shall be the duty of the appraisers of the United States, and every of them, and every person who shall act as such appraiser, or of the collector, as the case may be, by all reasonable ways and means in his or their power to ascertain, estimate, and appraise (any invoice or affidavit thereto or statement of cost, or of cost of production to the contrary notwithstanding) the actual market value and wholesale price of the merchandise at the time of exportation to the United States, in the principal markets of the country whence the same has been imported, and the number of yards, parcels, or quantities, and actual market value or wholesale price of every of them, as the case may require."

It is gathered that a weigher's function is, in its general nature, to ascertain the weight of the gross article, to enable the duty to be computed directly therefrom, and that only such articles as need no further treatment—at least, no such investigation as is demanded in case of silks—are subject to his action. But the mere fact that weighing enters into an examination of goods, and that the duty is computed ultimately upon the weight, does not require that the articles should be sent to the weigher, provided other investigation be required, beyond the skill or knowledge of the weigher. It is not an examiner's chief duty to weigh; neither is it at all a weigher's duty to do the several things demanded in the examination of silks. A weigher is that, and that alone. An examiner must in instances weigh goods to ascertain the duty, although the goods require other treatment from him. Examiners are not precluded from weighing goods when weighing is necessary for the purpose of discharging their duties. It seems quite within the duty of examiners to make the ascertainments demanded in the case of silks, and it seems quite incongruous that the duty should be relegated to weighers, who could not perform the same. The practice at the customhouse seems consistent with common sense, the statutory duty laid upon examiners, and the possibilities of the case. It is urged that it is only the duty of the assistant appraiser—hence his aid, the examiner—to ascertain value. This contention does not comport with section 10, above quoted. But assuming that such is the intended final result of his investigation, yet, to ascertain value, he must often learn the true nature of the material, its quantity and essential ingredients, and, in the case of goods similar to those here involved, he must make the investigations necessary to obtain information required by the statutes; and when, in addition, the duty is laid primarily upon the weight, with a proviso that the collectible duty must in no case be less than 50 per cent. of its value, it seems within the terms of the law that the weight, as well as the value, should be returned. In any case the collector evidently so construed the law, and the practice prevailed. The examiner assumed the duty, and the defendants indorsed the practice, and, as charged, took advantage of it to corrupt the examiner, and by means of his perfidious action obtained the liquidation of the goods at

the weights falsely stated in the invoice. But it is objected that the invoice is not required to contain the weight of the goods, and that the statement is immaterial. The invoice is made, and the examiner acted upon it. He approved it, and thereby adopted it as his report. He knew that the collector would base the liquidation upon it. Therefore, as to him, it is not important whether the importers were required to state the weights in the invoice. The importers knew that the invoice would be used. They intended it should be used. They intended to obtain, and did obtain, by means of it, a statement of the estimated duty, and thereby obtained all their goods, save what were sent to the appraiser's office. They intended, as charged, that the invoice should go to the examiner, that he should use it as the basis of his action and report, and that the collector should liquidate the entry in reliance upon it after such previous use.

Section 5445 says, "Every person, who, by any means whatever, * * * effects any entry," etc. This false invoice was a means adopted to enter the goods at less than their weight and for less than their duty, and the means was effected. Section 9 provides that if the examiner shall make an entry "by means of any fraudulent or false invoice, affidavit, paper, * * * or false or fraudulent practice or appliance whatsoever," he shall be punished.

The defendants' position seems to be that the means employed to make a false entry must be a perversion of a means required by law. This seems to be in antagonism to section 9. It must be a means that effects the result, and the indictment charges that the false invoice was such a means, and that it did effect the passage of the goods through the customhouse, so as to deprive the government of its lawful duties. The importers are not indicted for perjury or for making false statements in an invoice. They are indicted for conspiring to make and for making entries by means of fraudulent practices, wherein false invoices are made to do service. It is clear enough from the indictments that it is the custom to use the weights stated in the invoice for the purposes of the first entry, and also, if approved by the examiner, for the purposes of liquidation, and that the defendants availed themselves of such practice to get their goods at less than the legal duty. It would be unimportant if every step taken by the customs officials were contrary to law. That would mean simply that the defendants took practices as they found them, corrupted the officials engaged in them, and thereby imported their goods fraudulently, and deprived the government of its duty. It would mean that the defendants co-operated with an abnormal system to defraud the government. Because government officials, for the purpose of expediting business according to their own views, err, that does not excuse importers for corrupting such practices for the purpose of defrauding the government. It is not to be inferred that the opinion is entertained that the customs practiced were deviations from the law, unless in respect to the alleged examiner reporting directly to the collector, rather than through the assistant appraiser. For this no strict justification appears, and an honest importer might well object, as he is entitled to reports of the assistant appraiser and ap-

praiser; but a dishonest importer, who corrupts an examiner, in the expectation that his report will go to the collector and be approved, and thereby assure liquidation at less than legal duties, ought not to be heard inveighing against the anomalous methods.

There are other objections urged to the indictments that need not be discussed. They have been considered with suitable care, and the conclusion reached that the demurrers should be overruled.