## Case No. 9,022.

MANHATTAN FIRE INS. CO. v. WEILL.

[See 28 Grat. 389.]

---

## Case No. 9,023.

MANHATTAN GAS–LIGHT CO. v. MAXWELL.

[2 Blatchf. 405.] [1]

Circuit Court, S. D. New York. July 1, 1852.

CUSTOMS DUTIES — APPRAISEMENT — EXCESS OF QUANTITY—PENALTY—FEES OF WEIGHER.

1. A quantity of coal was invoiced and entered at a certain weight and price per ton. On appraisement, the price per ton was reported to be correct, but the quantity was reported as so much greater as to make the entire valuation greater by 10 per cent. than the entry valuation. The collector exacted a penalty of 20 per cent., under section 8 of the act of July 30, 1846 (9 Stat. 43). Held, that this was illegal.

¹ [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

2. The importer was not liable, in such case, under section 4 of the act of July 30, 1846 (9 Stat. 43), to pay the fees of the weigher and measurer.

This suit was commenced in the supreme court of New York, and removed by certiorari, on the petition of the defendant [Hugh Maxwell], into this court, under the provisions of the 3d section of the act of congress of March 2, 1833 (4 Stat. 633). The plaintiffs imported from Liverpool a quantity of cannel coal, invoiced and entered as of the weight of 150 tons. It was measured by the custom-house measurers, who returned the quantity to be 167 tons. No appeal was taken by the plaintiffs from that return, and duty was accordingly imposed on 167 tons, and was paid by the importers. The value of the increased quantity of the coal was greater, by more than ten per cent., than the entry valuation, and a penalty of 20 per cent., amounting to $99.60, was imposed by the collector because of such undervaluation. The measurers' fees, $49.50, were also charged to the plaintiffs. Payment of the two last mentioned sums was exacted by the collector, and was made by the plaintiffs under protest. To recover these amounts, $149.10, with interest, this action was brought. The plaintiffs endorsed on the entry a protest in writing "against the payment of the within named penalty of $99.60, and of $49.50 for measuring, as being both illegal and contrary to the former practice in this collection district."

The case was tried in November, 1851, before BETTS, J., and the jury rendered a verdict for the plaintiffs for $150, subject to the opinion of the court on a case to be made and to adjustment or correction at the custom-house.

John S. McCulloh, for plaintiffs.

J. Prescott Hall, Dist. Atty., for defendant.

Before NELSON, Circuit Justice, and BETTS, District Judge.

BETTS, District Judge. The defendant takes no exception to the sufficiency of the protest in this case, and the decision must turn on the points whether the undervaluation reported by the appraisers in respect to the coal subjects it to the penalty of 20 per cent. imposed, and whether the importers were liable to pay the measurers' fees charged against them.

The price per ton of the coal, as stated in the invoice, was reported to be correct. The difference between the valuation in the entry and that reported by the appraisers arose from the greater weight returned by the custom-house weighers.

Cannel coal is sold in England by actual weight, the weight being taken with great care. In the United States, it is delivered from the ship, and sold by the chaldron, and the custom house method of determining the weight of a cargo is to reduce the measured chaldron to tons and pounds, by taking the

average weight of two or three tubs full, and multiplying that average by the number of tubs composing a chaldron. The evidence in this case proves that this mode of weighing, or rather measuring, leads to inaccuracy and error, and generally gives, as a result, a nominal weight beyond the real weight of the coal. The official weight must, however, be taken in this case to be the true dutiable weight.

The claim to the penalty exacted is not placed upon any culpable conduct in the importers, nor does their innocence of blame exonerate them from liability to pay the penalty, if the collector brings the case within the provisions of the act. The authority invoked for imposing the penalty is given by the last proviso to the 17th section of the act of August 30th, 1842 (5 Stat. 564), which is in these words: "Provided, also, that in all cases where the actual value to be appraised, estimated and ascertained, as hereinbefore stated, of any goods, wares and merchandise imported into the United States, and subject to any ad valorem duty, or whenever the duty is regulated by or directed to be imposed or levied on the value of the square yard, or other parcel or quantity thereof, shall exceed, by ten per centum or more, the invoice value, then, in addition to the duty imposed by law on the same, there shall be levied and collected on the same goods, wares and merchandise fifty per centum of the duty imposed on the same when fairly invoiced:" and by the eighth section of the act of July 30th, 1846 (9 Stat. 43), which alters the penalty to twenty per cent. ad valorem on the appraised value, in case the goods have been actually purchased, and their invoice value has been raised by the importer to what he deems to be their market value in the country from which they were exported.

The argument for the United States is, that quantity is a component part of the value of this importation, and that, as the amount of the entry or the invoice lies in the quantity and price, a mis-statement of quantity on the invoice and the entry, exhibiting the gross amount (consisting of price and weight) at ten per cent. below the appraisement, becomes necessarily a reason for imposing the penalty, because the dutiable sum is thus entered at more than ten per cent. less than the sum on which the United States are entitled to charge duties.

Two considerations, in our judgment, countervail this argument. The language of the statute makes the value of the goods entered the subject of comparison with the appraisement, and the term "value" is used in the revenue laws to express the "price" of the dutiable goods—that is, their cost price or market price abroad, increased by the addition of specified charges. 5 Stat. pp. 563, 564, §§ 16, 17. The custom-house officers can, therefore, only look at the relative valuations of the commodity upon the invoice and the appraisal, in determining whether the latter exceeds the former by more than ten per cent. The ad valorem to which the tariff acts have reference, is the price or market worth of a dutiable article and its charges, in whatever way it is the subject of purchase and sale, whether the price is estimated on the square yard or other parcel or quantity. An aggregation of parcels (tons, in this instance) does not affect the value or price of a particular ton. It is only a repetition of that price as many times as the parcel or quantity is named. The general summation, therefore, being no more than the footing up of the specific values reiterated, cannot be regarded as the valuation which is called for by the statute, and which is the subject of appraisement and of penal duties.

That this interpretation of the revenue laws is correct, is manifest from the powers conferred on appraisers and the duties they are required to perform in determining the dutiable value of imported goods. An examination of the duty acts from 1799 to 1846, shows that appraisers are called upon solely to fix the price or value of the imported commodity by gauge, yard, weight or measure, by the denomination or description usually applied to it on purchase and sale. Officers other than appraisers ascertain what is the measure or weight of goods entered. Their report furnishes the multiple by which the particular valuation of the appraisers may be brought to the dutiable amount of the importation.

Upon this view of the subject, it is manifest that congress has not imposed the increased duty of twenty or fifty per cent. upon a mis-statement in the invoice of the quantity of articles imported, but upon an undervaluation of prices. Because, such increase or penalty depends upon and follows the judgment of the appraisers, and their office is limited to fixing the wholesale price or market value, and in no way extends to ascertaining the amount, in weight, gauge or measure, of imported goods.

We think that the defendant committed an error, after the appraisers had reported the invoice price of the coal to be correct, in imposing twenty per cent. additional duty because the weighers or measurers returned a greater quantity than was invoiced. The appraisement must be restricted to determining the price or value of the parcel or quantity by which the purchase and sale of the article are made, and has rightfully no reference to the totality of the purchase. Marriott v. Brune, 9 How. [50 U. S.] 619.

The remaining question is as to whether the importers, in this case, are chargeable with the fees of the weighers and measurers. The directions of the acts of congress prior to 1846 are not explicit as to the cases in which it shall be the duty of the collector to have imported goods weighed or measured, unless when they are stored for want of an invoice or entry, or have been detained for inspection under circumstances of suspicion. The mat-

ter appears to have been left to his discretion. The weighers and gaugers were paid for their services by the collector, out of moneys in the custom-house, and the payment was charged to the treasury (Act March 2, 1799, § 2; 1 Stat. 707), the amount of the compensation being limited by various acts. These officers were not directed, in the forms of returns prescribed by statute, to make any return of fees. Act March 2, 1799 (1 Stat. p. 678, § 72).

We have not deemed it important to search through the tariff acts, to ascertain whether any authority was given to the collector, prior to 1846, to charge fees for weighing and measuring, against the importer or the goods, or whether they were estimated and collected as duties, because we consider the whole subject to be definitively regulated by the 4th section of the act of July 30, 1846 (9 Stat. 43), which enacts, "that in all cases in which the invoice or entry shall not contain the weight or quantity or measure of goods, wares or merchandize now weighed or measured or gauged, the same shall be weighed, gauged or measured at the expense of the owner, agent or consignee."

In the present case, the invoice did contain a specific statement of the weight of the coal, and, admitting that coal was before subject to weight or measure at the custom-house, this act necessarily imports that the owner, in a case like this, shall not be subject to the cost of re-weighing it. The right to weigh at the expense of the owner depends upon the omission to give the weight in the invoice, and that omission affords the only justification for exacting costs and fees from the owner for weighing it.

We do not take into consideration the interpretation put upon this section of the act by the secretary of the treasury, in his circular of December 31st, 1849, nor decide whether the cases enumerated by him are those which justify the exaction of fees from importers, because no one of them contemplates or is based upon the state of facts presented by this case.

In our opinion, the plaintiffs are entitled to judgment, the amount of which is to be adjusted in the manner named in the verdict.