HAMPTON, JR., & CO. *v.* UNITED STATES (No. 1186).[1]

REDUCTION OF ENTERED VALUE—WHEN NOT ALLOWED.

> The entry, the invoice, and the replace invoice submitted to the Secretary of the Treasury all showed that the value of the wool exceeded 12 cents per pound, and there was no indication of error in stating the value or the charges to be deducted therefrom to make actual market value; and the entry itself, once made and verified, could not be corrected by the importer or the collector. The correction of the entry was properly denied on the papers submitted.—United States *v.* Zuricaldy (71 Fed., 955) distinguished.

United States Court of Customs Appeals, January 14, 1914.

APPEAL from Board of United States General Appraisers, Abstract 31984 (T. D. 33338).

[Affirmed.]

*Walter Evans Hampton* for appellants.

*William L. Wemple*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Thirteen bales of Zackel wool, purchased by Chas. Bloch & Co. from George Whitaker & Co., of Bradford, England, and weighing 3,225 pounds, were imported at the port of Philadelphia on October 22, 1911. The importation was invoiced at 22 cents per pound, or a total of $709.50, which amount was averred in the invoice to be the equivalent of £145.13.9, money of the country in which the purchase was made. It appeared on the face of the invoice that in the £145.13.9 there was included—freight, £2.17.6; insurance, 5 shillings 1 pence; and the consular fee of 10 shillings 4 pence, making a total of £3.12.11 nondutiable charges. The importers deducted these charges from the total value of £145.13.9, and entered the wool at the customhouse on October 23, 1911, as of the value of £142.0.10, or $691. The entered value of £142.0.10 was certified to the appraiser, and the appraiser found the actual market value of the wool to be 11½ cents instead of 22 cents per pound at the time of exportation to the United States. On December 5 the importers presented to the collector of customs a replace invoice, in which, as in the original invoice, the total price was alleged to be £145.13.9, or $709.50, the equivalent in American money. In addition to the nondutiable charges specified in the original invoice there was included in the replace invoice, however, an item of £26.9.9 duty on the wool at 4 cents per pound. The importers followed the replace invoice by an application to correct the entry and to lower the entry value to 11½ cents per pound on the ground of manifest clerical error. This application was transmitted to the Secretary of the Treasury on

---

January 22, 1912, and denied by him on January 31, 1912, for the reason that the market value of the wool, as shown by the replace invoice, was still more than 12 cents per pound and that no manifest clerical error had been shown. On April 4, 1912, the entry was liquidated at the entered value of 22 cents per pound and duty assessed on the goods at 7 cents per pound under that part of paragraph 370 of the tariff act of 1909 which reads as follows:

370. * * * On wools of the third class, * * * the value whereof shall exceed twelve cents per pound, the duty shall be seven cents per pound.

On April 8, 1912, the importers protested that the merchandise was not dutiable at 7 cents, but at 4 cents per pound. As grounds for the claim that the wool was not dutiable as assessed the importers alleged in their protest that the invoiced and entered value of 22 cents per pound was the price at which the goods were sold to the purchaser in the United States, which price included the profit of the seller, inland carriage, ocean freight, marine insurance, duty, and landing charges in the United States, and that the invoicing of the goods in that manner was an error manifest to the understanding which, if corrected, would make the goods dutiable at 4 cents per pound under paragraph 370, the part of which pertinent to the protest reads as follows:

370. On wools of the third class, * * * the value whereof shall be twelve cents or less per pound, the duty shall be four cents per pound.

The papers were transmitted to the Board of General Appraisers for determination of the issues raised by the protest, and on the hearing before the board, in addition to the record forwarded by the collector, there was submitted for the consideration of that tribunal the affidavit of George Whitaker, a member of the firm of George Whitaker & Co., of Bradford, England, which affidavit, under stipulation, was admitted in evidence for the purpose of showing clerical error only. In this affidavit Whitaker stated that the value set out in the invoice was the price at which the wool was sold to Chas. Bloch & Co., and included the market value in Bradford, ocean freight from Bradford to Philadelphia via Liverpool, insurance, consular invoice fee, duty in the United States, and the firm's profit on the sale. The affidavit further averred that the invoice clerk of the firm made an error in stating that the value of the wool was 22 cents per pound, and that the invoice should have been made out on a consigned form of consular invoice to the Boston representative of the shipper at 5¾ pence per pound, which was the wholesale market value in Bradford. To the affidavit was attached a *third* invoice which, in addition to the deductible charges mentioned in the original invoice and the replace invoice, contained a charge of 13 shil-

lings for bags and 37 pounds 12 shillings and 10 pence for seller's profit. This third invoice, so far as appears from the record, was never submitted either to the collector or the Secretary of the Treasury.

The Board of General Appraisers overruled the protest, and this appeal was taken on the ground that the board erred in not finding that the entered and invoiced value was a manifest clerical error.

At the time the collector assessed duty on the importation he had before him the entry of the importers, the original invoice, and the decision of the Secretary of the Treasury denying the application for the correction of the entry, which application was based on the replace invoice transmitted therewith. The entry, the invoice, and the replace invoice submitted to the Secretary of the Treasury all showed that the value of the wool exceeded 12 cents per pound, and none of those documents bore on its face any indication whatever that any error had been made in stating the value or the charges deductible therefrom to make actual market value. The appraiser's return did show a valuation of only $11\frac{1}{2}$ cents per pound, but as the collector was forbidden by the provisions of subsection 7 of section 28 of the tariff act of 1909 to assess duty in any case upon an amount less than the entered value, it is apparent that he had no recourse except to assess duty on the value as declared by the importers. In cases of undervaluation arising from manifest clerical error subsection 7 does provide that *additional duty* shall not be imposed, but clearly that provision, even if it be conceded that it permits the collector to determine the existence of manifest clerical error, warrants nothing more than relief from additional duties. Certainly it does not authorize the collector to ignore the positive mandate of the very same section that "duty shall not, however, be assessed in any case upon an amount less than the entered value." In brief, under subsection 7, whether there is a manifest clerical error or not, the collector of customs can not of his own motion assess the goods at less than entered value. *In re* Irwin & Sons (T. D. 25764); Fuerst *v.* United States (U. S. Circuit Court, Southern District of New York; T. D. 26658); Vantine *v.* United States (91 Fed. Rep. 519); United States *v.* Foard (U. S. Circuit Court, District of Maryland; T. D. 30936); United States *v.* Wyman (4 Ct. Cust. Appls., 264; T. D. 33485); Ballard *v.* Thomas (19 How., 382); Kimball *v.* Collector (10 Wall., 436, 453); Saxonville Mills *v.* Russell (116 U. S., 13, 18, 20).

Any errors in stating the value in the invoice may be corrected by the importer at the time of making and verifying his entry, but not afterwards. (Subsec. 7, sec. 28, tariff act of 1909.)

The entry itself, however, once made and verified can not be corrected by the importer, and neither can it be corrected by the collector—certainly not in cases involving a reduction of the entered

value.   The power to correct the entry was confided by Congress to the Secretary of the Treasury by the provisions of subsection 23 of section 28 of the tariff act of 1909, and its exercise was expressly limited by that section to cases of manifest clerical error.   Subsection 23, in so far as it is pertinent to the question here involved, reads as follows:

23. * * *   The Secretary of the Treasury is hereby authorized to correct manifest clerical errors in any entry or liquidation, for or against the United States, at any time within one year of the date of such entry, but not afterwards: *Provided*, That the Secretary of the Treasury shall, in his annual report to Congress, give a detailed statement of the various sums of money refunded under the provisions of this act or of any other act of Congress relating to the revenue, together with copies of the rulings under which repayments were made.

The application made in this case to the Secretary of the Treasury to reduce the entered value was based on a replace invoice which showed on its face a total price of £145.13.9 for the wool, subject to a deduction of the following charges:

|  | £ | s. | d. |
|---|---|---|---|
| Freight, Bradford to Philadelphia, at 40/- | 2 | 17 | 6 |
| Insurance | | 5 | 1 |
| Consular fee | | 10 | 4 |
| Duty at 4 cents per pound (the market value of the wool being 5¾d. per pound) | 26 | 9 | 9 |
| Total | 30 | 2 | 8 |

Deducting from £145.13.9 the charges, amounting to £30.2.8, left a market value for the wool of £115.11.1, which, reduced to American money at $4.8665, the value of the pound sterling proclaimed by the Secretary of the Treasury for the quarter in which the goods were imported, gave $562.34, or $0.1743 per pound as the value of the wool in our money.   Evidently, therefore, the Secretary of the Treasury was fully warranted in finding that the value of the wool as shown by the replace invoice was more than 12 cents per pound, and that the importers had failed to establish any manifest clerical error which would justify his correcting the entry.   Indeed, the only clerical error which appeared on the face of the replace invoice was the parenthetical statement that the market value of the wool was 5¾ pence per pound, a valuation which was at variance with the actual figures set out in the document and upon which the importers relied to show manifest clerical error.   Assuming, without conceding, that the Secretary's decision is subject to review, it is obvious, therefore, that correction of the entry was properly denied on the papers submitted and that the ruling to that effect ought to be sustained.

If there be any inherent power in the board or the courts to correct mistakes in entries and invoices not made manifest by the papers themselves, and we do not say that there is, it certainly can not be exercised to correct errors disclosed for the first time by evidence produced on the hearing before the board and not apparent at the time the official action complained of by the importers was taken.

The decision in United States *v.* Zuricaldy (71 Fed., 955), cited by importers in support of their protest, is not in point. In that case the consul, over the protest of importers, increased the invoice value by the addition of ocean freight and forced the importers to accept an invoice stating a value which they asserted was not the true market value of the goods. Under such circumstances the importers acted under compulsion and they were not foreclosed by a market value which was not voluntarily presented by them to the collector. Robertson *v.* Bradbury (132 U. S., 491).

In the case of Gillespie *v.* United States (124 Fed., 106), which is likewise relied on by the appellants here, the agent of the importers, immediately upon entry, pointed out to the collector an error of overvaluation which had been committed and the collector assented to its correction. The court held that the error was seasonably brought to the attention of the collector while the case was still pending before him, and based its conclusion on the rule laid down in United States *v.* Zuricaldy, *supra*, and United States *v.* Benjamin (72 Fed., 51). United States *v.* Zuricaldy involved no question of error on the part of the importers, and, as already stated, that case held simply that the importer was not bound by an invoice which he was obliged to present under compulsion. In United States *v.* Benjamin there was a manifest clerical error apparent on the face of the papers, inasmuch as it appeared that five items of merchandise were valued at 0.60 mark per dozen and the sixth item of the same merchandise at 6 marks per dozen. As the value of the five items was found to be 0.60 mark per dozen by the appraiser, it followed that the sixth item, which was valued at 6 marks per dozen, was manifestly incorrect. We must, therefore, decline to accept Gillespie *v.* United States as authority for the correction of an error not manifest on the face of the papers. In this matter no error was pointed out immediately upon entry, and the papers upon which the importers relied to show that the wool was of a value less than 12 cents established that it was worth in fact more than 12 cents per pound, and consequently dutiable as assessed.

The decision of the Board of General Appraisers is *affirmed*.