UNITED STATES *v*. BUSH & Co. *et al*. (No. 1164).[1]

WEIGHT OF WIRE—EVIDENCE.

The collector had before him the invoice, the entry, and the weigher's certificate, and it was apparent therefrom that the statement of the gross weight of the wire in the invoice and entry was incorrect and that the true weight less tare, which is the dutiable weight, was before him in the manner required by law. A case of manifest clerical error was thus presented and a shortage in weight of the shipment as invoiced appeared.—United States *v*. Nash *et al*. (27 Fed. Cas., 750); Marriott *v*. Brune (50 U. S., 633).

United States Court of Customs Appeals, February 5, 1914.

APPEAL from Board of United States General Appraisers, Abstract 31640 (T. D. 33263.)
[Rehearing denied.]

*William L. Wemple*, Assistant Attorney General, for the United States.
Submitted on record by appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

PER CURIAM: This was an importation of wire. The court held that inasmuch as the weigher's return was a necessary and statutory part of the record before the collector in the official ascertainment of the appropriate rate of duty under the provisions of paragraph 135, it was entitled to and should for that reason receive consideration in the ascertainment of the question whether or not a case of manifest clerical error was presented. United States *v*. Swedish Produce Co. (4 Ct. Cust. Appls., 223; T. D. 33437); United States *v*. Wyman & Co. (4 Ct. Cust. Appls., 264; T. D. 33485); United States *v*. National Steam Navigation Co. (Ltd.) (4 Ct. Cust. Appls., 491; T. D. 33915); United States *v*. Proctor Co. (5 Ct. Cust. Appls., 44; T. D. 34091); Hampton, jr., & Co. *v*. United States (5 Ct. Cust. Appls., 51; T. D. 34093); Thomsen & Co. *v*. United States (5 Ct. Cust. Appls., 69; T. D. 34100).

The Government petitions for a rehearing, alleging that—

No matter how the proviso to paragraph 135 be regarded, whether as strictly a rate-fixing provision or not, this merchandise is actually dutiable at 35 per cent ad valorem. Why it is so dutiable and what preliminary investigation is necessary to determine that it is so dutiable is not important.

The matter which, we respectfully submit, the court overlooked is that this wire was entered at the gross number of pounds for each lot, a lump sum therefor, and a statement as to each lot that it was dutiable at the prescribed rate per pound or at 35 per cent ad valorem, whichever the importer conceived the fact to be. That is to say, the unit of value stated by the importer was the value per lot of wire of the several classes in the shipment which are mentioned in the law. That value was returned correct by the appraiser, and no matter what weights the liquidator had by him, he had no way of knowing what per pound value the importer placed upon the goods.

The importation was of a mixed lot of round steel wire, some in casks and some in bundles. Some of the bundles and casks were of one size and others of another. Some were dutiable at a specific

rate under paragraph 135 and other lots at an ad valorem rate. Each lot was invoiced by weight, unit price, and aggregate price. Each lot was entered by weight, invoice, and dutiable value. It does not appear that the appraiser approved the entered value. On the contrary, the entered weights differ from the invoice weights, all of which, in turn, differ from the weigher's weights, and the appraiser's return simply approved the invoice as "correct." The assumption by the counsel for the Government that "the unit of value stated by the importer was the value per lot of wire of the several classes in the shipment which are mentioned in the law" and "that value was returned correct by the appraiser" is not strictly accurate. The record shows that the goods were invoiced at one weight and at a unit value, while they were entered at another weight at gross value, which differs from the invoice particulars, which latter, and not the former, were adopted as the appraised value by the appraiser. These facts, however, we take to be without controlling importance. [This is not a case wherein the entry controls.] The importation was of wire. The due ascertainment of its dutiable status under the appropriate paragraph of the tariff law (135) required in each case that each lot be weighed. Each lot was duly weighed by the official weigher and his certificate presented to the collector at or before the time of his decision and the assessment of duty. Having before him the invoice, the entry, and the weigher's certificate, it was made apparent therefrom that the statement of the gross weight of the wire in the invoice and entry was incorrect, and that the true weight, less tare, which is the dutiable weight (Rev. Stat., sec. 2898), was before him in the manner required by the law. The record, therefore, presented a case of manifest clerical error, and, further, evidenced a shortage in weight of the shipment as invoiced. The fact that the appraiser adopted the gross invoice value in his appraisement was not binding upon the collector as against the weigher's certificate.

The identical question was long since presented and decided in United States v. Nash et al. (27 Fed. Cas., 750; case No. 15856), opinion by Mr. Justice Clifford of the Supreme Court sitting in circuit. That was an importation of tea. It was invoiced at 100,179 pounds, valued at $38,869. It seems to have been entered as invoiced. It was certainly appraised identically as was this importation, by "writing on the back of the invoice the word 'correct' and signing the same." The weigher's return showed the actual weight to be 103,808 pounds, valued at $40,279. Of this state of the record Mr. Justice Clifford said:

But ad valorem duties, where they are required to be assessed on a given weight, must be assessed upon the actual weight when landed as ascertained by the proper officer of the customs. Appraisers determine the actual market value or wholesale price of the merchandise in the principal markets of the country from which the

same was imported, but they have no authority to determine the weight or quantity of the importation. * * * Their powers do not authorize them to extend their inquiries beyond what is necessary to enable them to appraise the value of the merchandise as required by law. * * * Such being the case, the collector was bound to adopt that quantity (that returned by the weigher) and the value ascertained by the appraiser as the legal basis for the assessment of the duties.

It will be borne in mind that at that time the statutory requirement that duty could in no instance be taken at less than the entered or invoiced value of the merchandise, whereas at the present time the former of these two requirements is no longer a statutory mandate.

The respective duties of the appraiser and the weigher have been concisely set forth in an opinion by Judge Somerville, speaking for the Board of General Appraisers, in G. A. 5178 (T. D. 23871), wherein it is stated:

The duty of the local appraiser was confined to ascertaining the value per unit of quantity; he had no authority to find the value of the total importation. "The appraisement," says Judge Betts, "must be restricted to determining the price or value of the parcel or quantity by which the purchase and sale of the article are made, and has rightfully no reference to the totality of the purchase." Manhattan Gas Light Co. *v.* Maxwell (2 Blatch., 405; 16 Fed. Cas., 601). And Mr. Justice Woodbury has observed that if appraisers undertake to fix the quantity or weight of imported merchandise "their action in that respect is *coram non judice*, and a nullity." Marriott *v.* Brune (9 How., 634). Of course, these remarks evidently have reference only to cases where the goods are of a kind to be weighed by a United States weigher, for as to other merchandise the appraisers are required to ascertain and estimate "the number of yards, parcels, or quantities." (Sec. 10, act of June 10, 1890.) In the present case the weigher having duly acted, the return of the local appraiser, naming a gross sum as the value of the entire lot of hides, was irregular and improper, and is not to be commended. Indeed, it was not strictly responsive to the collector's request to "report the correct dutiable value" of the invoice. Instead of saying that he found the invoice price per kilo, 1.4954 shillings, to be correct, or stating any other figure as the proper price per kilo, he reported a gross sum (the product of the two factors, the weight of the hides by the price per kilo) as the "actual cost of the merchandise:" Thus he avoided finding the one thing he was authorized to find, the market value per unit of quantity, while he apparently approved the weight of the hides as noted on the invoice. As a matter of fact, this weight differed from that of the United States weigher by more than 100 pounds.

The return is objectionable as being ambiguous; but in any event the collector was justified in assessing duty on the invoice price per kilo. If the local appraiser's action be construed as an approval of that price, then it became the appraised value of the hides; while, if the local appraiser is to be understood as having found a lower value for the hides, then such value would not bind the collector, because duty shall not in any case be assessed "upon an amount less than the invoice or entered value." (Sec. 7, act of June 10, 1890.)

And again, in G. A. 5848 (T. D. 25767), speaking for the board Judge Somerville well interpreted the decisions in the following statement:

The law has long been settled to be, and the practice has uniformly followed the rule, that where goods bought and paid for by the ton weight are subject to ad valorem rates of duty the value upon which duty should be assessed is to be determined by multiplying the number of tons and fractions of tons which arrived by the proper value per ton, and upon that amount the duty should be assessed, whether the weight imported was greater or less than the weight specified in the invoice (T. D. 8159).

"The appraisement," says Judge Betts, "must be restricted to determining the price or value of the parcel or quantity by which the purchase and sale of the article are made, and has rightfully no reference to the totality of the purchase." Manhattan Gas Light Co. *v.* Maxwell (2 Blatch., 405; 16 Fed. Cas., 601); United States *v.* Nash (27 Fed. Cas., 750); Marriott *v.* Brune (9 How., 619, 634); United States *v.* Southmayd (*ib.*, 637); Austin *v.* Peaslee (2 Fed. Cas., 235); Weaver *v.* Saltonstall (38 Fed., 439); Reiss *v.* Magone (39 *id.*, 105); *In re* American Sugar Refining Co., G. A. 4071 (T. D. 16914); *In re* Rossbach, G. A. 5178 (T. D. 23871); *In re* Wyman, G. A. 4529 (T. D. 21525), and T. D. 4502. In Nash's case, *supra*, it was observed by Judge Clifford in regard to an importation of tea, then subject to an ad valorem duty, that "ad valorem duties, where they are required to be assessed on a given weight, must be assessed upon the actual weight when landed, as ascertained by the proper officer of the customs. Appraisers determine the actual market value or wholesale price of the merchandise in the principal markets of the country from which the same was imported; but they have no authority to determine the weight or quantity of the importation." In other words, this is the duty of the weigher. *In re* Yarnell, G. A. 3282 (T. D. 16637).

See also in this connection United States *v.* Rosenthal (126 Fed., 766) and Browne *v.* United States (145 Fed., 1).

Since the rendition of the above decisions the law requiring that in no case shall the duty be taken in less than the entered or invoice value has been amended by eliminating the first requirement. In any event such cases of manifest clerical error, as well as of shortage, fall within the statement of the Supreme Court of the United States in Marriott *v.* Brune (9 How., at pp. 633–634), as follows:

But much more should duties not be exacted on what was lost or destroyed on its way hither and which never came even into the possession or control of the custom-house officers, and much less into the use of the community.

Something has been urged in argument on the estimate made by the appraisers, and the final character attached to it. However that may be, if one was made in this case it could be final only as to the price of the sugar abroad and not as to the quantity or weight reaching this country. The latter is fixed by another class of officers, authorized by law for that purpose; and if the appraisers undertake to fix it, their action in that respect is *coram non judice*, and a nullity.

*Petition denied.*