UNITED STATES *v.* KUTTROFF, PICKHARDT & Co. (INC.) (No. 1990).[1]

1. CONSTRUCTION, PARAGRAPH I OF SECTION 3, TARIFF ACT of 1913—"APPRAISED VALUE"—"ENTERED VALUE."

In paragraph I of section 3, tariff act of 1913, levying additional duty in case the appraised exceeds the entered value, the "appraised value" and the "entered value" must be taken to mean the *unit* value and not the *total* value.

2. ADDITIONAL DUTY.

An importation of 114 casks containing 17,920 pounds net of hydrosulphite of soda was erroneously entered on a pro forma invoice as 104 casks of hydrosulphite of soda containing 19,040 pounds at $1.25 per pound and 10 casks of zinc formosul containing 1,120 pounds at 50 cents per pound. The appraiser returned a value of 62½d. per pound. Since 62½d. per pound, at the current rate of exchange exceeds $1.25 per pound by between 1 and 2 per cent, the collector's action in treating the whole importation as having been entered at $1.25 per pound and in assessing additional duty of 1 per cent under paragraph I of section 3, tariff act of 1913, furnished the importer with no just ground for complaint. The fact that the importer's misapprehension as to the content and weight of the importation resulted in his having paid to the collector a greater sum than the duty he really owed does not relieve him of the penalty incurred under the law for undervaluation, since the valuation was the *unit* value and not the *total.*

---

[1] T. D. 38204 (37 Treas. Dec., 232).

United States Court of Customs Appeals, November 25, 1919.

APPEAL from Board of United States General Appraisers, G. A. 8251 (T. D. 37987).

[Reversed.]

*Bert Hanson*, Assistant Attorney General, for the United States.
Submitted on record by appellee.

[Oral argument October 14. 1919, by Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

February 15, 1918, Kuttroff, Pickhardt & Co. (Inc.), through their brokers, Stone & Downer Co., duly presented to the collector of customs at the port of Boston a pro forma invoice of an importation at that port. The pro forma invoice recites that the importation consisted of 104 casks of hydrosulphite of soda, weighing 19,040 pounds, valued at $1.25 per pound c. i. f.; total, $23,800. It is further recited therein that the above price includes ocean freight, insurance, dock and town dues, cartage to dock, bill of lading and consul fees, nondutiable charges aggregating $1,696.40. That invoice further recites that the importation contained 10 casks of zinc formosul, weighing 1,120 pounds, valued at 50 cents per pound at the works, a total of 560 packages, $24.35. The aggregate value of all the foregoing is stated upon the invoice to be $24,384.35 The net dutiable amount of this invoice was stated to be $22,687.95. Due entry was permitted and made accordingly upon this pro forma invoice, the weights being entered at 20,160 pounds; total net value, $22,687.95. Duties were estimated at 15 per cent ad valorem under paragraph 5 of the tariff act of 1913, aggregating $3,403.20, which said amount was paid to the collector of customs, received and receipted by him on said date. Bond was given for the production of the consular invoice. Upon due production of the consular invoice, apparently on June 5, 1918, it was disclosed that the importation contained no zinc formosul and that it consisted of 114 casks of hydrosulphite of soda. Twenty casks thereof, or 4,480 pounds, were invoiced at 4s. 2d.; the remaining 94 casks, weighing 13,440 pounds, were invoiced at 5s. 2½d. c. i. f., according as purchased on different contracts. Neither appraisement nor liquidation was had until the arrival of the consular invoice. The entire importation was sent to the official weigher at that port, and he returned that the importation consisted of 17,920 pounds net of hydrosulphite of soda. Thereupon appraisement was had, and the appraiser at the port of Boston made return that the whole importation was of the value of 5s. 2½d. per pound c. i. f. The collector accordingly liquidated 17,920 pounds at 62½d. per pound, less nondutiable charges.

Based upon the rate of exchange of $4.8665, the unit value of $1.25 per pound, at which price importers entered the merchandise, was

over 1 per cent but under 2 per cent less than the unit value of 5s. 2½d. per pound c. i. f., as appraised. Accordingly, the collector liquidated and took additional duties upon 17,920 pounds at 62½d. per pound, the appraised value, at the rate of 1 per cent ad valorem under the provisions of paragraph I of section 3 of the act of October 3, 1913, which provides in pertinent particulars:

I. \* \* \* If the appraised value of any article of imported merchandise subject to an ad valorem duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the value declared in the entry, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total appraised value thereof for each 1 per centum that such appraised value exceeds the value declared in the entry: \* \* \* *Provided further,* That all *additional duties* (italics ours), penalties, or forfeitures applicable to merchandise entered by a duly certified invoice shall be alike applicable to merchandise entered by a pro forma invoice or statement in the form of an invoice. \* \* \* The duty shall not, however, be assessed in any case upon an amount less than the entered value, \* \* \*.

The method adopted by the collector in his estimation of the per cent of additional duties within the statute is fully set forth in the record but in the view taken of the case by the court is here unnecessary of recital. The entire importation was treated by the collector as 114 casks of hydrosulphite of soda, weighing 17,920 pounds, entered at $1.25 per pound and appraised at 62½d. per pound, which reduced, at a rate of exchange of $4.8665, was an entered value of more than 1 per cent but less than 2 per cent under the appraised value. Accordingly, $203.67 in additional duties was assessed against the importers, deducted from the estimated duties paid upon entry, and the remaining amount, $65.43, returned them June 5, 1918. Against the additional duties so assessed the importers protested. Upon appeal the Board of General Appraisers sustained their protest, and by appeal to this court the question of the legality of the action of the collector in so assessing the additional duties is here presented for decision.

Fundamentally it will aid consideration of the issue by defining the terms "appraised value" and "entered value" as used in said paragraph I. Inasmuch as the provision literally requires comparison of two values, necessarily they must, to be thus comparable, be the same in kind. That is to say, if the one is a unit value so must be the other, and if the one is a gross or quantity value so, to be comparable, must be the other.

The provision in effect, though sometimes differing as to the conditions when attaching and the amount of the additional duties, has long been the legislative policy of Congress and as such repeatedly construed and reenacted in principle. That the "appraised value" of merchandise is the *unit* value and not the total value of the im-

portation is well settled in customs adjudication.    Thus, in Marriott
v. Brune et al. (9 How., 50 U. S., 619, 633), the court said:

> Something has been urged in argument on the estimate made by the appraisers and the final character attached to it.   However that may be, if one was made in this case it could be final only as to the price of the sugar abroad and not as to the quantity or weight reaching this country.   The latter is fixed by another class of officers, authorized by law for that purpose; and if the appraisers undertake to fix it, their action in that respect is coram non judice and a nullity.

The law was so completely and pertinently discussed in Manhattan Gas-Light Co. v. Maxwell (16 Fed. Cas., 600) by Judge Betts, speaking for the Circuit Court of the Southern District of New York, Nelson, circuit justice, concurring, that we quote therefrom at length, as follows:

> The official weight must, however, be taken in this case to be the true dutiable weight.
>
> The claim to the penalty exacted is not placed upon any culpable conduct in the importers, nor does their innocence of blame exonerate them from liability to pay the penalty, if the collector brings the case within the provisions of the act.   The authority invoked for imposing the penalty is given by the last proviso in the seventeenth section of the act of August 30, 1842 (5 Stat., 564), which is in these words:
>
>> Provided, also, that in all cases where the actual value to be appraised, estimated, and ascertained, as hereinbefore stated, of any goods, wares, and merchandise imported into the United States, and subject to any ad valorem duty, or whenever the duty is regulated by or directed to be imposed or levied on the value of the square yard, or other parcel or quantity thereof, shall exceed, by ten per centum or more, the invoice value, then, in addition to the duty imposed by law on the same, there shall be levied and collected on the same goods, wares, and merchandise fifty per centum of the duty imposed on the same when fairly invoiced:   *   *   *.
>
> The argument for the United States is that quantity is a component part of the value of this importation, and that, as the amount of the entry or the invoice lies in the quantity and price, a misstatement of quantity on the invoice and the entry, exhibiting the gross amount (consisting of price and weight) at 10 per cent below the appraisement, becomes necessarily a reason for imposing the penalty, because the dutiable sum is thus entered at more than 10 per cent less than the sum on which the United States are entitled to charge duties.
>
> Two considerations, in our judgment, countervail this argument.   The language of the statute makes the value of the goods entered the subject of comparison with the appraisement, and the term "value" is used in the revenue laws to express the "price" of the dutiable goods; that is, their cost price or market price abroad, increased by the addition of specified charges. (5 Stat., pp. 563, 564, secs. 16, 17.) *The customhouse officers can therefore only look at the relative valuations of the commodity upon the invoice and the appraisal in determining whether the latter exceeds the former by more than 10 per cent.*   The ad valorem to which the tariff acts have reference is the price or market worth of a dutiable article and its charges, in whatever way it is the subject of purchase and sale, whether the price is estimated on the square yard or other parcel or quantity.   An aggregation of parcels (tons, in this instance) does not affect the value or price of a particular ton.   It is only a repetition of that price as many times as the parcel or quantity is named. *The general summation, therefore, being no more than the footing up of the specific values reiterated, can not be regarded as the valuation which is called for by the statute and which is the subject of appraisement and of penal duties.*
> (Italics ours.)

That this interpretation of the revenue laws is correct is manifest from the powers conferred on appraisers and the duties they are required to perform in determining the dutiable value of imported goods. An examination of the duty acts from 1799 to 1846 shows that appraisers are called upon solely to fix the price or value of the imported commodity by gauge, yard, weight, or measure by the denomination or description usually applied to it on purchase and sale. Officers other than appraisers ascertain what is the measure or weight of goods entered. Their report furnishes the multiple by which the particular valuation of the appraisers may be brought to the dutiable amount of the importation.

Upon this view of the subject it is manifest that Congress has not imposed the increased duty of 20 or 50 per cent upon a misstatement in the invoice of the quantity of articles imported, but upon an undervaluation of prices, because such increase or penalty depends upon and follows the judgment of the appraisers, and their office is limited to fixing the wholesale price or market value, and in no way extends to ascertaining the amount, in weight, gauge, or measure, of imported goods.

We think that the defendant committed an error, after the appraisers had reported the invoice price of the coal to be correct, in imposing 20 per cent additional duty because the weighers or measurers returned a greater quantity than was invoiced. The appraisement must be restricted to determining the price or value of the parcel or quantity by which the purchase and sale of the article are made, and has rightfully no reference to the totality of the purchase. Marriott *v.* Brune (9 How. [50 U. S.], 619.)

This has been the consistent and often adjudged interpretation of "appraised value" by the Board of General Appraisers in several opinions of conspicuous merit. See J. H. Rossbach & Bro. case, G. A. 5178 (T. D. 23871), and Geo. S. Bush & Co. case, G. A. 6916 (T. D. 29876), wherein the cases are cited and reviewed. This court in United States *v.* Bush & Co. (5 Ct. Cust. Appls., 127; T. D. 34187) reviewed the foregoing and other decisions and made the same pronouncement. The subject may, therefore, Congress having repeatedly reenacted in substance the foregoing provision, be said to be stare decisis.

While expedition of public business may and often does warrant and require appraising officers to adopt as forms of appraisment the totals of invoices and entries, this is in effect but an exercise of their legal function of approving the involved or expressed *unit* value. Likewise, often, as in this case, computation of the per cent basis of additional duties is and must be made by use of totals. Nevertheless it must be and is in effect a calculation of a difference in unit values of appraisal and entry or invoice.

We are therefore here presented with the concrete facts that the goods were entered at $1.25 per pound and appraised at 62½d. per pound, upon which statement of facts, the rate of exchange being $4.8665, the court is to adjudge the application of the quoted portion of section 3, paragraph I, supra. Calculation shows the per cent the appraised unit value exceeds that of the said entered unit value to be 1.385 per cent, which is over 1 and under 2 per cent as determined and applied by the collector at Boston.

While it will be noted that the importers paid in more than sufficient estimated duties to meet the additional duties collected, owing to

their overestimation of weights, and received a refund, this accident of commerce can not change the application of the plain words of the statute, no more than should the amount paid in have been less. Nor can the fact that the entered unit of value must be adduced by computation from the totals upon the entry though stated in the invoice change the result. As a matter of fact, the variance in entered and appraised values adopted by the collector and here adjudged applies in this lessor and adopted degree to but a part of the invoice items, benefit being given the importers as to the remaining portions, his good faith being apparent from the record. The decisive crux of the case is that the appraised unit of value is more by 1.385 per cent than the entered unit of value, wherefore the statute applies and must be constructed and enforced accordingly.

The judgment of the board is *reversed*.