## IGSTAEDTER & Co. *v.* UNITED STATES (No. 2159).[1]

1. APPRAISED VALUE.

   In customs adjudication, it is conclusively settled that the appraised value of merchandise is the *unit* value and not the *total* value of the importation.

2. APPRAISEMENT—FINALITY.

   After an appraisement has been lodged with the collector, it is final so far as the appraiser is concerned.—United States *v.* Bennett (2 Ct. Cust. Appls. 249; T. D. 31975). Any further appraisement is functus officio, null, and void.

3. APPRAISEMENT—ADDITIONAL DUTY.

   Goods were entered on an invoice stating the unit price, the number of units, and the total value. The total value was in excess of the proper extension. After his approval of the entry the appraiser reported that the unit value had been raised to make the extension stated the proper one, but the appraised value had been inadvertently omitted. The approved *unit* value was the appraisement; there was no authority in law for raising it, and additional duty for undervaluation under paragraph I, Section III, tariff act of 1913, was erroneously imposed.

### United States Court of Customs Appeals, March 30, 1923.

APPEAL from Board of United States General Appraisers, unreported decision of January 20, 1922.

[Reversed.]

*Brooks & Brooks* (*Frederick W. Brooks, jr.*, and *Ernest F. A. Place* of counsel) for appellants.

Submitted on record by the United States.

[Oral argument March 21, 1923, by Mr. Place.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

BLAND, Judge, delivered the opinion of the court:

The appellants, importers, entered for duty one case of cotton piece goods, consisting of 77 pieces of 4,678¾ yards at 1.80 francs, which was sent to the appraiser's warehouse for examination. The invoice sets out the above quantity and unit price and extends the same to francs 9,220.85, which is admittedly arithmetically incorrect.

Attached to the invoice is the usual form "Summary of entered value, examination and appraisement." In the "Appraised" column appears the check mark [v] and date "12/6/20," and the examiner's initials in red ink. The summary sheet is stamped "Approved, Dec. 6, 1920, John K. Sague, Appraiser."

The record contains a letter of the customhouse brokers, dated January 27, 1921, asking for a correction in liquidation of the erroneous extension. On March 16, 1921, the examiner wrote in red ink on the back of the summary sheet the following, which was approved and countersigned by the assistant appraiser and the appraiser:

The extension is correct, the unit value 1.80 is incorrect.

The extension is based on Fcs. 1.97 per yd. and Fcs. 1.97 per yd., less 3% dis., was the correct home market value of the goods at time of shipment. Invoice quantity is correct.

---

[1] T. D. 39570.

Through error the correct unit of extension was inadvertently omitted from the invoice by the examiner. However, as it was found that the entered value fully covered the market value it was not intended to advance the value.

Attached to the invoice is a white memorandum dated July 27, 1921, from the acting deputy collector to the liquidator, as follows:

Importer claims the unit price to be 1.80 less 3%. It was appraised at 1.97 less 3%. Additional duty under Par. I, Sec. III, applies.

From a judgment of the Board of United States General Appraisers, affirming the assessment of additional duties levied under the provisions of paragraph I, Section III, of the tariff act of October 3, 1913, this appeal is prosecuted.

That portion of paragraph I, Section III, of said act under which the levy was made is as follows:

* * * and if the appraised value of any article of imported merchandise subject to an ad valorem duty or to a duty based upon or regulated in any manner by the value thereof, shall exceed the value declared in the entry, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total appraised value thereof for each 1 per centum that such appraised value exceeds the value declared in the entry: * * *

The above part of the act of 1913 is identical with the act of June 10, 1890, as amended by the act of July, 1897.

In customs adjudication it is conclusively settled that the "appraised value" of merchandise is the *unit* value and not the total value of the importation.—United States *v.* Kuttroff (9 Ct. Cust. Appls. 239; T. D. 38204); United States *v.* Bush & Co. (5 Ct. Cust. Appls. 127; T. D. 34187); Marriott *v.* Brune et al. (9 How. 50 U. S. 619); J. H. Rossbach & Bro. case, G. A. 5178 (T. D. 23871); Geo. S. Bush & Co. case, G. A. 6916 (T. D. 29876).

From the undisputed facts it appears that the appraiser approved of the unit value stated in the invoice on December 6, 1920. Any further appraisement by the appraiser was functus officio and null and void. The deputy collector's statement that the appraisement was 1.97 less 3 per cent has no foundation in law or fact, and can not change the legal effect of the appraisement made on December 6, 1920.—United States *v.* Bennett (2 Ct. Cust. Appls. 249; T. D. 31975).

The action of the appraiser and the deputy appraiser on March 16, 1921, was in effect to reappraise the unit value which had been appraised on December 6, 1920. The law applicable to this question has been very definitely and logically pronounced by Judge Barber, who rendered the opinion of the court in United States *v.* Bennett (2 Ct. Cust. Appls. 249–252; T. D. 31975), in which the court said:

Under article 1241 of the Customs Regulations of 1899 the return of the appraiser could not be reconsidered or modified by him after it was lodged with the collector except in case of clerical error. No statute or authority has been called to our attention which warrants the conclusion that the appraiser has authority, unless it be in case

of clerical error, to change an appraisement once made and returned to the collector. To so hold might involve inextricable confusion and uncertainty and work delay in the due administration of the revenue laws contingent upon the change of mind or a whim upon the part of an appraiser. Of course, an assistant appraiser could have no such authority.

We think that an appraiser after having once performed the duty of appraisement in respect to any particular merchandise and after having made his return thereof to the collector has no authority of his own volition to make another appraisement of the same merchandise. It follows, therefore, that the collector was justified in disregarding the attempted reconsideration or modification, if it may be so called, of the first appraisement made in this case, and that it was his duty to recognize, as he did, that the value of the importation was fixed by the appraisal made thereof and returned to him on the 9th day of May, 1907, unless it may be hereinafter for other reasons be found invalid.

The following cases support the above reasoning: United States *v.* Frank & Lambert (2 Ct. Cust. Appls. 239; T. D. 31973); Arthur *v.* Unkart (96 U. S. 118); Gibbs *v.* Washington (1 McAll. 430); Wolff *v.* United States (1 Ct. Cust. Appls. 181; T. D. 31217).

It follows from the above reasoning that the merchandise in question in this case is not subject to the additional duties, and the judgment of the Board of General Appraisers is *reversed.*

### CONCURRING OPINION.

BARBER, Judge: I fully concur in the reasoning and conclusion of the foregoing opinion. In justice, however, to counsel for the Government as well as for the importers and as showing why this case is before us, I think it should appear that the opinion of the Board of General Appraisers was as follows: "This case was submitted for decision on the papers forwarded by the collector with the protest. The importer was given two weeks in which to file a brief. That time has expired and no brief has been filed. From an examination of the papers it is by no means certain that the collector was in error The protest is therefore overruled."

In this court the attorney for the Government has not undertaken by brief or argument to sustain the board's conclusion, but does state in open court that a tender of a stipulation of reversal has been made to counsel for importer which has not been accepted. In saying this I do not mean to be understood as criticizing the conduct of counsel for either the Government or the importer.

The board's opinion speaks for itself.