(Reap. Dec. 10444)

WILMINGTON SHIPPING COMPANY *v.* UNITED STATES

Entry No. 126, etc.

(Decided February 11, 1963)

*Allerton deC. Tompkins* for the plaintiff.

*Joseph D. Guilfoyle,* Acting Assistant Attorney General (*Daniel I. Auster* and *Samuel D. Spector,* trial attorneys), for the defendant.

RAO, Judge: The appeals for reappraisement listed in the schedule, hereto attached and made a part hereof, which have been consolidated for purposes of trial, are the subject of a motion to dismiss, on the ground that the notices of appeal were prematurely filed.

It appears from the official papers and other evidence of record that said appeals for reappraisement relate to several shipments of plywood, exported from Japan between January 25, 1960, and June 10, 1960, consigned to plaintiff for the account either of Thomason Plywood Corp. of Fayetteville, N.C., or United Plywood Co. of London, England. In making entry of said shipments, plaintiff retained, as a consultant, one Edward C. Snead, a customhouse broker, who, for upwards of 32 years prior to 1959, held various positions in the customs service, including those of assistant collector at both Wilmington, N.C., and Charleston, S.C.; acting collector at Wilmington, and administrative officer with the Bureau of Customs.

In an affidavit, dated April 20, 1961, admitted in evidence as plaintiff's exhibit 1, Mr. Snead recited the details of his actions with respect to the involved entries. He explained that, on or about October 29, 1960, plaintiff delivered to him a set of "Notice[s] of Probable Unpaid Duties or Taxes" (plaintiff's collective exhibit 2), in which plaintiff was advised that the values in the several cases would be advanced; and that 20 days would be allowed for the presentation of objections to the contemplated action.

On November 2, 1960, Mr. Snead discussed the entries in question with the appraiser of merchandise at Wilmington, with the object of seeking an extension of time beyond the 20 days allowed in the notices. He was, however, informed that appraisement had been completed on the same date the notices were issued, under authority of section

8.29 (c) of the Customs Regulations, as amended.[1] Thereupon, he conferred with the assistant collector of customs who "upheld the right of the Appraiser in this matter," and "notified me in his official capacity that an appraisement had been made at the values set forth in writing on the 'Notices of Probable Unpaid Duties or Taxes', and he stated that I should advise the Wilmington Shipping Company to file appeals to reappraisement immediately."

Being of opinion that the "Notice[s] of Probable Unpaid Duties or Taxes," together with the advice of the assistant collector "constituted personal delivery of notice of appraisement on the above entries as required by Sec. 501, Tariff Act of 1930, as amended," Mr. Snead suggested to plaintiff that appeals for reappraisement be filed. Acting in accordance with this suggestion, plaintiff filed the instant notices of appeal, on November 2, 1960, in reappraisement numbers R60/20118 and R60/20149, and on November 3, 1960, in the remaining cases.

In a letter, dated April 20, 1961 (plaintiff's exhibit 3), plaintiff forwarded Mr. Snead's affidavit to the assistant collector of customs at Wilmington, N.C., for the purpose of ascertaining whether it correctly recited the events preceding the filing of the instant notices of appeal for reappraisement, and whether the collector's office considered the conversation therein adverted to as personal delivery of notices of appraisement.

Mr. James E. Townsend, assistant collector of customs, replied, by letter, dated April 24, 1961 (plaintiff's exhibit 4), that he believed the affidavit to be correct in all essential details and that it was his *personal* opinion "that the conversations which took place between customs personnel and Mr. Snead on or about November 2, 1960, concerning the appraisement of the above mentioned entries did constitute personal delivery of notice of appraisement as contemplated under section 501 of the Tariff Act."

Notwithstanding the foregoing recital of events, it appears from the official papers, which were moved in evidence, but not marked, that the appraiser's report, customs Form 6417, was dated November 10, 1960, and it is admitted that written notice of appraisement with respect to each entry was forwarded to the Wilmington Shipping Company on that date.

It is this circumstance, in the light of the provisions of section 501 of the Tariff Act of 1930, as amended, upon which counsel for de-

---

[1] Section 8.29 (c), Customs Regulations, as amended:

If the examiner believes that the entered rate or value of any merchandise is too low, or if he finds that the quantity imported exceeds the entered quantity, and the estimated aggregate of the increase in duties in the shipment exceeds $15, he shall promptly notify the importer of record on every shipment, on such form as may be appropriate at the port, and specify the nature of the difference on the notice. The report of appraisement shall not be withheld unless in the judgment of the appraiser there are compelling reasons that would warrant such action.

fendant predicates his motion to dismiss. The contention is made that the instant appeals for reappraisement are premature, in that they were filed prior to the date of appraisement.

The cited section of the Tariff Act of 1930 reads as follows:

The collector shall give written notice of appraisement to the consignee, his agent, or his attorney, if (1) the appraised value is higher than the entered value, or (2) a change in the classification of the merchandise results from the appraiser's determination of value, or (3) in any case, if the consignee, his agent, or his attorney requests such notice in writing before appraisement, setting forth a substantial reason for requesting the notice. The decision of the appraiser, including all determinations entering into the same, shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed with or mailed to the United States Customs Court by the collector within sixty days after the date of the appraiser's report, or filed by the consignee or his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. Every such appeal shall be transmitted with the entry and the accompanying papers by the collector to the United States Customs Court.

Seemingly, the statute is explicit in its requirement that an importer's appeal for reappraisement must rest upon and follow written notice of appraisement, and it has been held that an appraisement is not complete until the requisite notice is forwarded. *Joseph Fischer as Liquidating Agent of Schmoll Fils Associated, Inc.* v. *United States*, 23 Cust. Ct. 1, C.D. 1179, affirmed on other grounds, 38 CCPA 143, C.A.D. 452.

Counsel for plaintiff urges, in effect, however, that there has been substantial compliance with the provisions of section 501, *supra*, in that personal advice that appraisement had been made, coupled with the written notices of probable unpaid duties or taxes, constituted personal delivery of notices of appraisement. In this view, he is supported by the personal opinion of the assistant collector of customs at Wilmington.

Counsel argues that the pleading provisions of the tariff laws should be liberally construed to sustain jurisdiction, and that, under authority of *United States* v. *European Trading Co.*, 26 CCPA 103, C.A.D. 1, a pleading technically premature may, nevertheless, be considered timely.

The question involved in *European Trading Co.*, *supra*, which bears upon the problem here, concerned the timeliness of an application for review of a decision and judgment of a single judge taken in behalf of the Government. The controlling statute, section 501 of the Tariff Act of 1930, prior to any amendment, read in part as follows:

Such decision [of the single judge] shall be final and conclusive upon all parties unless within thirty days from the date of the filing of the decision with the collector an application for its review shall be filed with or mailed to the United States Customs Court by the collector or other person authorized by the

Secretary of the Treasury, and a copy of such application mailed to the consignee, or his agent or attorney, or filed by the consignee, or his agent or attorney, with the collector, by whom the same shall be forthwith forwarded to the United States Customs Court. * * *

It appears that the decision and judgment sought to be reviewed were promulgated on March 4, 1937, and filed with the collector of customs at the port of Seattle on March 8, 1937. Some time after 10 a.m., on March 8, 1937, the Government's application for review was filed with the court. The motion to dismiss was predicated upon the fact that it did not affirmatively appear that the decision and judgment were filed in the collector's office prior to the time the application for review was filed with the court, in view of the 3-hour time differential between Seattle and New York, and, hence, that the application for review was premature.

The matter came before the second division of this court, which granted the motion to dismiss on two grounds. First, it was held that where an act is required to be done within a specified time from a given date, the given date must be excluded from the computation, and, therefore, an application for review filed on the same day the judgment was filed with the collector was premature. Secondly, this court observed that, even considering an application filed on the same day as the receipt of judgment by the collector to be timely, the record did not affirmatively show that the latter act preceded the former.

These views as applied to the facts in the case were not upheld by the Court of Customs and Patent Appeals, which reversed the judgment of dismissal. In so doing, the court observed that a statute of limitations does not necessarily prevent action prior to the commencement of the period prescribed. As noted by the court, the purpose of a statute of limitations is to operate as a cutoff date beyond which all rights are fixed and determined, and, for the protection of the interested party, it is reasonable to exclude the date on which the time commences. However, where action prior to the commencement of the period is involved, the reason for the rule of exclusion does not always obtain.

The court was of the opinion that once a judgment of a single judge was duly promulgated, no rights could be adversely affected by an immediate filing of an application for review, and no sound purpose could be served by requiring the appealing party to wait for the filing of the decision of the single judge with the collector.

After considering the limitations imposed by sections 501, 514, 515, and 518 of the Tariff Act of 1930, on the time within which actions therein specified might be taken, the court stated:

It is our view that, in the various limitations with respect to appeals and applications for review, Congress did not intend that no action could be taken

before the period of limitation had commenced, *if in all other respects the same conditions existed before the commencement of such period as were present during the period of limitation.* [Italics supplied.]

Emphasis has been given to the last portion of the foregoing quotation, for it seems to contain the answer to the problem involved in the instant case. As applied to the cited case, the statement reflects the court's clear understanding, based upon established principle, that an application for review filed before a decision of a single judge had been duly promulgated would be premature and void. As applied to the present situation, the statement must be interpreted as precluding the filing of an appeal for reappraisement prior to the time appraisement has been made, for it seems obvious that until the appraiser's action has been completed, there is no decision from which an appeal can be taken.

The statute provides that the appraiser's decision shall be final and conclusive upon all parties, unless a written appeal for reappraisement is filed. The finality of a determination presupposes the existence of a determination; and the right to review a decision does not accrue until the decision has been rendered.

Accordingly, there can be little doubt that if the appeals for reappraisement here involved were filed before the merchandise covered by the entries was appraised, there is no foundation to support them, and they are premature. It, therefore, becomes material to determine when appraisement of the subject merchandise was effected.

The law is well settled that an appraiser may not consider or modify his appraisement after his return is lodged with the collector. *United States* v. *Gothic Watch Co.*, 23 Cust. Ct. 235, Reap. Dec. 7712; *Igstaedter & Co.* v. *United States*, 11 Ct. Cust. Appls. 477, T.D. 39570; *Ringk & Co.* v. *United States*, 12 Ct. Cust. Appls. 40, T.D. 39980; *United States* v. *Dorn & Co.*, 13 Ct. Cust. Appls. 130, T.D. 40961; *F. W. Myers & Co.* v. *United States*, 36 Treas. Dec. 194, T.D. 37934; *Ainslee Knitting Machine Co., Inc.* v. *United States*, 69 Treas. Dec. 954, T.D. 48339. Presumptively, therefore, while the appraiser retains possession of the entry papers, he may reexamine his findings or alter his return. *United States* v. *Electric Auto-Lite Co.*, 25 Cust. Ct. 394, Reap. Dec. 7866. Since, however, a second appraisement of imported merchandise is not authorized by law (*United States* v. *Frank & Lambert*, 2 Ct. Cust. Appls. 239, T.D. 31973), the appraiser cannot have made a valid first appraisement until he no longer possesses the right to vary his return. While it is true that the act of lodging his report with the collector is not conclusive of appraisement, since the law requires that notice of appraisement must be given, the appraiser's relationship with the entry ceases when he transmits the papers to the collector. It is at that time, and not before, that appraisement may be said to be complete.

In the instant case, it is not disputed that the appraiser dated his reports November 10, 1960, and that written notices of appraisement were mailed to the plaintiff on that day. Since the copies of the notices of appraisement which are in the official files indicate that they were sent by the collector's office, it must be assumed that the reports of appraisement, which the appraiser signed on November 10, 1960, were filed with the collector on that day.

The regrettable aspect of the situation which is here revealed is that quite clearly both the appraiser and the assistant collector advised the representative of the plaintiff that the subject entries had been appraised on October 28, 1960, the date when notices of probable unpaid duties or taxes were forwarded. Unfortunately, however, their verbal assurances of the fact of appraisement may not be transmuted into the existence of the act of appraisement at the time of which they were speaking. Moreover, it is no part of the function of customs officials to advise importers as to the nature and extent of their rights. *Jacksonville Paper Co., a Corporation* v. *United States*, 30 CCPA 159, C.A.D. 228. It remained the duty of plaintiff to determine for itself when the appraisements were completed and when appeals for reappraisement would be timely.

While plaintiff may have been misled by the conversations with the customs officials in question, assuredly, it was not estopped from protecting its rights and complying with the statutory provisions for timely filing of appeals for reappraisement, in view of the fact that notices of appraisement were duly forwarded, and the statute plainly provides for an appeal within 30 days from the date of the mailing of such notices.

By reason of the foregoing considerations, the court is constrained to hold that the instant appeals for reappraisement were prematurely filed. The motion to dismiss the appeals is, therefore, granted.

Judgment will be entered accordingly.